Basye v. Ambrose.

------

BASYE, Plaintiff in Error, v. AMBROSE, Defendant in Error.

1. Whether a sum stipulated to be paid in case of the breach of the provisions of a contract is to be regarded as a penalty or as liquidated damages must be determined by the nature of the contract and its provisions; if the whole scope of the instrument shows that it is stipulated for as a penalty, the parties can not constitute it liquidated damages by designating and stipulating for it as such.

2. Where the agreement secures the performance or omission of various acts which are not measurable by any exact pecuniary standard, together with one or more acts in respect of which the damages on a breach of covenant are readily ascertainable by a jury, and there is a sum stipulated for as damages for a breach of any one of the covenants, such sum is a penalty merely.

3. In every answer, amendatory or supplemental, the defendant must set forth, in one entire pleading, all matters which by the rules of pleading may be set forth therein, and which may be necessary to the proper determina-

tion of the defence. (R. C. 1855, p. —, § 13.) The courts can not permit parties to dispense by agreement with the statutory provision bearing on this subject; as by agreeing that the original and amended answers shall be considered as one.

### Error to Callaway Circuit Court.

This was a suit instituted by Basye on a certain bond executed by the defendant Ambrose, in favor of said Basye and one Bachman. The latter had assigned his interest in the contract to the plaintiff. The bond is sufficiently set forth below in the opinion of the court. Evidence was given bearing upon the question of the breach of the bond by the defendant. The court, among other instructions given and refused, gave the following at the instance of the defendant: "The amount specified in the bond read in evidence is not liquidated damages, but a penalty; and if the jury find the facts necessary to enable the plaintiff to recover, it can only be for such damages as he may have actually sustained by the default of the defendant, which it would, in such case, be incumbent on him to find."

The plaintiff took a voluntary nonsuit, with leave, &c.

*Parsons* and *White*, for plaintiff in error.

I. The court erred in giving the second instruction. The court had no right to interfere with the measure of damages fixed by the parties. (2 Pars. on Contr. 434–5; 2 Sto. Eq. § 1313, 1318; 1 Mo. 149; Hemplen v. Snider, 17 Mo. 258; 4 Bun. 2228; 17 Wend. 447; Story on Contr. § 1021; 2 Greenl. Ev. § 257.) The defendant should, at least, have laid some foundation for the instruction, either by alleging that the amount claimed was wholly disproportionate to the injury, or by alleging fraud, imposition, accident or mistake, or something of that sort. (2 Sto. Eq. § 1316; 17 Mo. 260; 2 Sto. Eq. § 1223; Gower v. Saltmarsh, 11 Mo. 271; 7 Whea. 17; 2 Greenl. on Ev. § 258.)

*Lay* and *Gardenhire*, for defendant in error.

I. The law is well settled that the action of the court shall be defined or determined by the terms which the parties have

seen fit to apply to the sum named in the contract. (2 Pars. on Contr. 435.) The sum agreed upon will be treated as a penalty, unless it is payable for an injury of uncertain amount and extent, or unless it be payable for *one* breach of *contract*, or if *for many*, then unless the damages to arise from *each of them* are of *uncertain amount.* (See 2 Pars. on Contr. 433 *et seq.*; Moore & Hart v. Platte Co. 8 Mo. 467; Gower v. Saltmarsh, 11 Mo. 271; Chiddich v. Marsh, 1 New Jer. 463; Bayley v. Peddit, 5 Sandf. 172; Crisdee v. Bolton, 3 Car. & Payne, 240.)

SCOTT, Judge, delivered the opinion of the court.

As none of the evidence is preserved in the bill of exceptions but that which related to the breaches of the condition of the bond, the instructions given and refused concerning other matters can not be reviewed in this court, as, for any thing that appears, they have been rejected as irrelevant, not being warranted by the testimony. The main point presented for our consideration is whether the sums stipulated to be paid by the defendant for a violation of the condition of the bond was a penalty or liquidated damages.

They mistake the object and temper of our system of jurisprudence who, while maintaining that men in making all contracts have a right to stipulate for liquidated damages regardless of the disproportion to the sum resulting from a breach of the contract, insist that it would be hard if men were not permitted to make their own bargains. No system of laws would command our respect or secure our willing obedience which did not to some extent provide against the mischiefs resulting from improvidence, carelessness, inexperience and undue expectations on one side, and skill, avarice and a gross violation of the principles of honesty and fair dealing on the other. The folly of one in making a wild and reckless stipulation will not justify gross oppression in another. A just man when he sees one in a situation in which he is prepared to make a contract which must grind and

oppress him, will not take advantage of his state of mind and enrich himself by his folly and want of experience. It has been remarked that in reason, in conscience, in natural equity, there is no ground to say, because a man has stipulated for a penalty in case of his omission to do a particular act (the real object of the parties being the performance of the act), that if he omits to do the act he shall suffer an enormous loss, wholly disproportionate to the injury to the other party.

By the common law, if one bound himself in a penalty of a greater sum for the payment of a less one—as if he bound himself in a penalty of two hundred pounds to pay at a given date one hundred pounds—if the less sum was not punctually paid at or before the day, the penalty was forfeited, and in an action at law upon the bond the whole of it was recovered. But courts of equity, seeing the hardship and oppression of this, interfered and granted relief on the payment of the sum really due with interest. This principle was so conformable to the dictates of natural equity, that Parliament, in the fourth year of Anne, incorporated it into the statute law and enabled courts of law to give the relief before only attainable in courts of equity; so, with regard to bonds by which the performance of other acts than the payment of money was secured by a penalty, at common law the failure to do the act, or any one of the acts whose performance was thus secured, caused a forfeiture of the penalty, and the whole of it was recovered in an action at law on the bond. Against these forfeitures courts of equity relieved the defendant upon his compensating for the damages he had actually sustained by reason of the breach of the condition of the bond. Here, as in case of bonds conditioned to pay money, Parliament, by statute, enabled a party to obtain in a court of law the relief which was afforded by courts of equity. The statute of .8 and 9 of William III. required, that in all actions upon any bond, or on any penal sum for nonperformance of any covenants or agreements contained in any deed or writing, breaches should be assigned, and that damages

should be assessed for those breaches; and although judgment as formerly was entered for the penalty, yet if the defendant, after such judgment and before execution, paid into court the damages assessed, a stay of execution was awarded on the record; or if, by reason of the execution, the damages and costs were fully paid, the defendant was discharged until a further breach of the condition of the bond. Upon this statute, Sergeant Williams (1 Saund. 58) remarks that the " words ' may assign,' in the first part, and ' may suggest,' in the subsequent part of the statute, are compulsory upon the plaintiff; for the act was made in favor of defendants and is a remedial law calculated to give plaintiffs relief up to the extent of the damages sustained, and to protect defendants against the payments of further sums than are in conscience due, and also to take away the necessity of proceedings in equity to obtain relief against an unconscientious demand of the whole penalty in cases where small damages only have accrued; and therefore it is not in the plaintiff's power to refuse to proceed according to the statute, but he must assign the breach of such covenants as he proceeds to recover satisfaction for." We have substantially incorporated into our code of laws the statutes of 8 and 9 William III., and of the 4th of Anne.

Although courts of equity relieved against penalties, yet they did not interfere where the damages were liquidated. But whilst they acted on this principle, they did not suffer their jurisdiction to relieve against penalties to be evaded by the introduction of the words into the agreement " not as a penalty, but as liquidated damages." They acted as they did in the case of mortgages, in regard to which—having declared that what was once a mortgage was always a mortgage—they treated as a nullity and utterly discountenanced any contract by which the mortgagor's right of redemption was impaired, or in any way attemped to be taken away—as they would act in the case of a usurious contract, where the borrower expressly agrees that the excessive interest should not be so regarded, but deemed a compensation to the lender for his

labor in handling and counting the money in making the loan. In such cases. they would never be restrained from affording relief to the oppressed by the claim that freemen should be permitted to make their own contracts. The doctrine would amount to this : that in all cases the victim of avarice and extortion might by a contract dispense with the law which afforded him protection against the cruelty of his oppressor. Story says that in cases of liquidated damages courts of equity will not interfere to grant relief, but will deem the parties entitled to fix their own measure of damages ; provided always the damages do not assume the character of gross extravagance or of wanton and unreasonable disproportion to the nature or extent of the injury. But, on the other hand, courts of equity will not suffer their jurisdiction to be evaded merely by the fact that the parties have called a sum damages which is in fact and in intent a penalty ; or because they have designedly used language and inserted provisions which are in their nature penal, and yet have endeavored to cover up their objects under other disguises. (2 Story's Eq. § 1318.)

As the object of the statute, in requiring breaches to be assigned in actions on penal bonds conditioned to perform collateral acts, was to enable defendants to obtain that relief at law which had formerly only been afforded them by courts of equity, and as courts of equity, whilst they did not relieve against liquidated damages, yet would not suffer their jurisdiction to be evaded by calling a penalty damages, so courts of law, succeeding to the jurisdiction of courts of equity by virtue of the statute, will not permit the relief they are authorized to grant to be defeated by the shallow artifice of calling a penalty liquidated damages. The duty of the courts, in cases of this kind, is to ascertain when the sum stated is in fact a penalty and when it is properly intended as liquidated damages, as the just, appropriate and conventional amount sustained by the doing or not doing the act stipulated to be done or omitted.

It is obvious that every case occurring under this branch

of the law must in a great measure be determined by its own circumstances. If courts were to hold that the parties, by adopting any particular form, might relieve their contracts from their supervision, the law would be entirely defeated, as nothing would be easier than to adopt such form in every case. The nature and stipulations of the contract must determine whether the sum stipulated to be paid in case of its violation is a penalty or liquidated damages. The statute can not be evaded by arbitrarily calling a penalty liquidated damages. We shall not attempt to review the cases on this subject. They are numerous and not easily reconcilable. On such a question an entire concurrence of opinion could hardly be expected. But yet there are some rules on this subject which are generally concurred in, and those rules show that the sum stipulated to be paid in the contract before us is a penalty and not liquidated damages. The cases of Astley v. Weldon, 2 Bos. & Pul. 346; Davies v. Penton, 6 Barn. & Cres. 216; Komble v. Farren, 6 Bing. 141; Boys v. Ancell, 5 Bing., N. C., 390, and Moore & Hunt v. Platte County, 8 Mo. 167, show that where the agreement secures the performance or omission of various acts which are not measurable by any exact pecuniary standard, together with one or more acts in respect of which the damages on a breach of contract are readily ascertainable by a jury, and there is a sum stipulated as damages for a breach of any one of the covenants, such sum is held to be a penalty merely.

The case before us, when examined, will be found to come within the principle above stated. The defendant bound himself in the sum of one thousand dollars to Basye & Bachman as liquidated damages, not as a penalty, in consideration of certain acts to be performed by them, to go with them to California to dig for gold; to make his own clothing and shoes; to furnish himself with a good gun, two good knives, belt, tomahawk, and all such weapons as might be deemed necessary for the trip. After he had reached California, he was, if required, to aid them for two months in building a dwelling-house and lots for cattle, and to assist

them in other necessary work about gold digging. He further bound himself to work for them for three years from the time of setting out for California; to do all things necessary and proper on their journey; to work diligently, constantly and faithfully; to make a full return to them of all the gold dug and discovered by him, and to give half thereof to Bachman & Basye. In case of a failure to comply with the contract, he obligated himself to pay Bachman and Basye one thousand dollars as liquidated damages and not as a penalty, and in the event of their receiving damages over that sum he bound himself to pay whatever damages they might sustain; but in no event were the damages to be less than one thousand dollars. From this recital of the agreement, it is clear that there were acts to be performed the damages resulting from the nonperformance of which might be readily ascertained by a jury, and whose amount would be merely nominal, bearing no proportion to the sum stipulated as liquidated damages—a disproportion so great as would shock the moral sense of every one. What court would suffer a party to recover one thousand dollars from another as liquidated damges because he had failed to account for one dollar's worth of gold dust, or because he had failed to furnish himself with a knife when he already had one?

The thirteenth section of the ninth article of the practice act prescribes that in every petition, answer or reply, amendatory or supplemental, the party shall set forth, in one entire pleading, all matters which, by the rules of pleading, may be set forth in such pleading, and which may be necessary to the proper determination of the action or defence. Nothing therefore could be more surprising than, in looking over the record in this case, to see an entry, that, by the agreement of parties, the original and amended answers are considered as one in the pleading. The provision is a very wise and salutary one, freeing courts and juries of great embarrassment and the parties from much unnecessary cost. It is hard to conceive how any court could arrive at the conclusion that it possessed the power, by consent of parties, to

dispense with this section of the law. No reason is seen why, if the court can in such way dispense with this provision, it may not in like manner dispense with every law regulating its conduct and the making up of its records in suits between individuals.

Affirmed; Judge Richardson concurs. Judge Napton absent.