## C. M. Condon v. L. H. Kemper.

Contract — *Breach* — *Liquidated Damages* — *Penalty*. Kemper and Condon entered into a written contract whereby Condon agreed to build a wall, etc., or else at his election to remove a certain house three feet, and put it in as good condition as it was before; and in such contract the parties further stipulated as follows: "It is mutually agreed between said parties that a failure on the part of said Condon to perform these obligations shall entitle said Kemper to recover from him the sum of $500 as liquidated and ascertained damages for the breach of this contract." Condon elected not to build the wall, etc., and afterward failed to remove the house. The cost of removing the house and putting it in as good condition as it was before would not have exceeded $100. *Held,* That when the parties made the contract and stipulated for damages in case of breach, fixing the amount at $500, they could not have had in contemplation actual compensatory damages, and therefore *held,* that the sum of $500 mentioned in such contract as liquidated and ascertained damages, must be treated as a penalty and not as liquidated damages.

*Error from Labette District Court.*

This was an action brought in the district court of Labette county by *L. H. Kemper* against *C. M. Condon*, to recover $500 as liquidated damages for the alleged breach of the following written contract, to wit:

"This agreement, between L. H. Kemper and C. M. Condon, witnesseth: That whereas, the said Kemper has sold to said Condon lot 7, block 38, in Oswego, Kas., said Condon, as a part of the consideration therefor, agrees to erect thereon a two-story stone or brick building, not less than 100 feet deep, within six months, and to give use of the north wall thereof to said Kemper; or else remove the house now on lot 6, in said block 38, three feet north of where it now stands, as said Condon shall elect to do, and put said building in as good condition as it is in its present location. It is mutually agreed between said parties that a failure on the part of said Condon to perform these obligations shall entitle said Kemper to recover from him the sum of $500 as liquidated and ascertained damages for the breach of this contract.     C. M. Condon.

"Oswego, Kas., March 11, 1887."

The defendant answered as follows:

"Said defendant admits the execution and delivery of the writing marked 'Exhibit A,' attached to and made part of plaintiff's petition, but he alleges the fact to be that said writing was executed and delivered under a misapprehension and a mistake of the facts in reference to the subject-matter of the transaction therein referred to as they actually existed, and that but for such mistake such writing would not have been executed. Defendant alleges that plaintiff was the owner of lots 6 and 7, in block 38, in the city of Oswego, Kas.; that the frame house mentioned in said writing belonged to plaintiff, and was appurtenant to said lot 6; that defendant negotiated for and purchased from plaintiff said lot 7 with a view of erecting thereon a stone or brick building; that at the time of purchasing said lot 7 and of executing and delivering said writing, both plaintiff and defendant understood and believed that said frame house, mentioned in said writing, and which belonged on and was appurtenant to said lot 6, stood on the line between said lots 6 and 7, the main part of it being, as said parties supposed, on lot 6 and about two or three feet in width of it standing on said lot 7; that to permit defendant to build on his said lot 7 would necessitate the removal of said house, as said parties believed, some three feet to the north; that plaintiff sold and defendant bought said lot under such belief; that plaintiff, in negotiating for the sale of said lot 7, objected to being put to the expense of removing said house so that it would all stand on his own lot 6, or insisted if he were put to such expense he should be compensated therefor, and to this defendant assented, and agreed that he would, at his own expense, remove said frame house so that it should entirely stand on said lot 6, and far enough across the line between said lots 6 and 7 not to interfere with the erection of a wall on said line, and put it in as good condition as it then was where it then stood, or if he should so elect, instead of removing and repairing said house as aforesaid, he might erect on said lot 7 a brick or stone building not less than 100 feet deep and give plaintiff the use of the north wall thereof, as compensation for his moving and repairing said house as aforesaid; that it was to meet such contingency and secure such end that said writing was executed and delivered; that thereafter this defendant elected not to erect said stone or brick building on said lot 7 and not to furnish plaintiff the use of the north wall thereof; that by agreement between said

plaintiff and defendant, said block was afterward surveyed, and the fact was then ascertained that said frame building did not stand, as both of said parties had supposed it did, across the line between said lots 6 and 7, a part on 6 and a part on 7, but that it all then stood on said lot 6 and so far from the line between lots 6 and 7 as not to interfere with the erection of a wall thereon, and therefore a removal of said frame building was unnecessary and would be of no advantage whatever to plaintiff.

"Defendant alleges that the only purpose on the part of plaintiff or defendant in the execution and delivery of said writing was to indemnify plaintiff against cost and expense in the removal and repair of said house as aforesaid, and that had plaintiff desired its removal after the fact in reference to its true location was ascertained, he could have had it removed three feet north of where it then stood, and put in as good condition as it was where it then stood, at a cost and expense of not to exceed $100; that said house could, at the time of the execution of said writing, or at any time since then, have been removed three feet north of where it then stood and now stands, and put in as good condition as it then was in its then location, at a cost of not to exceed $100; that in no event could plaintiff's damage, had he desired to have had said house removed, exceed $100; that to indemnify against such possible damage was the only object in giving said writing. Defendant alleges that plaintiff has not removed said house, and has in no way been to any cost or expense on account of the removal of said house or for any other purpose referred to in any way in said writing. Defendant denies that plaintiff has suffered any damage on his account and denies any liability to him in any respect..

"Wherefore defendant asks that this cause be dismissed and that he recover his costs herein."

The plaintiff replied, denying every allegation of the answer inconsistent with the allegations of his petition. At the February term, 1889, when the case was called for trial, the plaintiff moved for judgment upon the pleadings, and the court sustained the motion and rendered judgment accordingly, in favor of the plaintiff and against the defendant, for $500, with interest and costs. The defendant excepted, and afterward, as plaintiff in error, brought the case to this court for review.

*Case & Glasse,* for plaintiff in error.

*J. H. Morrison,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: The substantial question involved in this controversy is, whether the plaintiff below, L. H. Kemper, may recover from the defendant below, C. M. Condon, the sum of $500 as agreed and liquidated damages, or whether he can recover only the amount of his actual loss or damage resulting from the breach of the contract sued on, which amount, according to the facts of the case as presented to us, cannot exceed $100. The contract upon which Kemper seeks to recover contains the following among other stipulations:

"It is mutually agreed between said parties that a failure on the part of said Condon to perform these obligations shall entitle said Kemper to recover from him the sum of $500 as liquidated and ascertained damages for the breach of this contract."

It will be seen that the parties themselves have used the words "liquidated and ascertained damages," but nearly all the authorities agree that neither these words nor any other words of similar import are conclusive, but that the amount named, notwithstanding the use of such words, may nevertheless be nothing more than a penalty. Some of such authorities are the following:

*Lampman v. Cochran,* 16 N. Y. 275; *Ayres v. Pease,* 12 Wend. 393; *Hoag v. McGinnis,* 22 id. 163; *Beale v. Hayes,* 5 Sandf. 640; *Gray v. Crosby,* 18 Johns. 219; *Jackson v. Baker,* 2 Edw. Ch. 471; *Shreve v. Brereton,* 51 Pa. St. 175; *Fitzpatrick v. Cottingham,* 14 Wis. 219; *Fisk v. Gray,* 11 Allen, 132; *Wallis v. Carpenter,* 13 id. 19; *Ex parte Pollard,* 2 Low. 411; *Bayse v. Ambrose,* 28 Mo. 39; *Carter v. Strom,* 41 Minn. 522; same case, 43 N. W. Rep. 394; *Schrimpf v. Mfg. Co.* 86 Tenn. 219; *Haldeman v. Jennings,* 14 Ark. 329; *Davis v. Freeman,* 10 Mich. 188; *Hahn v. Horstman,* 12 Bush, 249; *Low v. Nolte,* 16 Ill. 475; *Kemble v. Farren,* 6 Bing.

9 — 47 KAS.

141; *Davies v. Penton,* 6 Barn. & C. 216; *Horner v. Flintoff,* 9 Mees. & W. 678; *Newman v. Capper,* 4 Ch. Div. 724.

Of course, the words of the parties with respect to damages, losses, penalties, forfeitures, or any sum of money to be paid, received or recovered, must be given due consideration; and, in the absence of anything to the contrary, must be held to have controlling force; but when it may be seen from the entire contract, and the circumstances under which the contract was made, that the parties did not have in contemplation actual damages or actual compensation, and did not attempt to stipulate with reference to the payment or recovery of actual damages or actual compensation, then the amount stipulated to be paid on the one side, or to be received or recovered on the other side, cannot be considered as liquidated damages, but must be considered in the nature of a penalty, and this even if the parties should name such amount "liquidated damages." The following text-books upon this subject may be examined with much profit: 1 Sedg. Dam. (8th ed.), ch. 12, §§ 389–427; 1 Suth. Dam., ch. 7, § 6, pp. 475–530; 13 Am. & Eng. Encyc. of Law, pp. 857–868; 1 Pom. Eq. Jur., §§ 440–447; 3 Pars. Cont., § 2, pp. 156–163. The text-books upon this subject unite in saying that the tendency and preference of the law is to regard a stated sum as a penalty instead of liquidated damages, because actual damages can then be recovered, and the recovery be limited to such damages. (1 Suth. Dam., p. 490; 13 Am. & Eng. Encyc. of Law, pp. 853, 860.) The decisions of this court are also in this same line. The only decisions of this court upon the subject of liquidated damages are the following: *Kurtz v. Sponable,* 6 Kas. 395; *Foote v. Sprague,* 13 id. 155; *St. L. & S. F. R'y. Co. v. Shoemaker,* 27 id. 677; *Heatwole v. Gorrell,* 35 id. 692. We are satisfied with the foregoing decisions of this court, but they do not go to the extent of controlling the decision in the present case. The last case cited is supported by the following additional cases: *Davis v. Gillett,* 52 N. H. 126; *Caswell v. Johnson,* 58 Me. 164; *Burrill v. Daggett,* 77 id. 445.

In 1 Sedgwick on Damages (8th ed.), the following, among other language, is used:

"From the foregoing we derive the following as a general rule governing the whole subject: Whenever the damages were evidently the subject of calculation and adjustment between the parties, and a certain sum was agreed upon and intended as compensation, and is in fact reasonable in amount, it will be allowed by the court as liquidated damages." (Section 405.)

"And here we are brought back by a somewhat circuitous path to the great fundamental principle which underlies our whole system — that of compensation. The great object of this system is to place the plaintiff in as good a position as he would have had if his contract had not been broken. So long as parties themselves keep this principle in view, they will be allowed to agree upon such a sum as will probably be a fair equivalent of a breach of contract. But when they go beyond this, and undertake to stipulate, not for compensation, but for a sum out of all proportion to the measure of liability which the law regards as compensatory, then the law will not allow the agreement to stand. In all agreements, therefore, fixing upon a sum in advance as the measure or limit of liability, the final question is, whether the subject of the contract is such that it violates this fundamental rule of compensation. If it does so, the sum fixed is necessarily a penalty. If it does not do so, the question arises, as in any other contract, as to what agreement the parties have actually made, and here, as in all other cases, their intention, as ascertained from the language employed, is a guide." (Section 406.)

"Where the stipulated sum is wholly collateral to the object of the contract, being evidently inserted merely as security for performance, it will not be allowed as liquidated damages." (Section 410.)

"Whenever an amount stipulated is to be paid on the non-payment of a less amount, or on default in delivering a thing of less value, the sum will generally be treated as a penalty." (Section 411.)

"Whenever the stipulated sum is to be paid on breach of a contract of such a nature that the loss may be much greater or much less than the sum, it will not be allowed as liquidated damages." (Section 412.)

"A sum fixed as security for the performance of a contract containing a number of stipulations of widely different im-

portance, breaches of some of which are capable of accurate valuation, for any of which the stipulated sum is an excessive compensation, is a penalty." (Section 413.)

"If the contract is one in which the measure of damages for part performance is ascertainable, and a sum is stipulated for breach of it, this sum will not be allowed as liquidated damages in case of a partial breach." (Section 415.)

In 1 Pomeroy on Equity Jurisprudence, the following language is used:

"Where an agreement contains provisions for the performance or non-performance of several acts of different degrees of importance, and then a certain sum is stipulated to be paid upon a violation of any or all of such provisions, and the sum will be in some instances too large, and in others too small a compensation for the injury thereby occasioned, that sum is to be treated as a penalty and not as liquidated damages. This rule has been laid down in a somewhat different form, as follows: Where the agreement contains provisions for the performance or non-performance of acts which are not measurable by any exact pecuniary standard, and also of one or more other acts in respect of which the damages are easily ascertainable by a jury, and a certain sum is stipulated to be paid upon a violation of any or of all these provisions, such sum must be taken to be a penalty." (Section 443.)

"Whether an agreement provides for the performance or non-performance of one single act, or of several distinct and separate acts, if the stipulation to pay a certain sum of money upon a default is so framed, is of such a nature and effect that it necessarily renders the defaulting party liable in the same amount at all events, both when his failure to perform is complete and when it is only partial, the sum must be regarded as a penalty and not as liquidated damages." (Section 444.)

In 1 Sutherland on Damages, the following, among other language, is used:

"While no one can fail to discover a very great amount of apparent conflict, still it will be found on examination that most of the cases, however conflicting in appearance, have yet been decided according to the justice and equity of the particular case." (Page 478.)

"To be potential and controlling that a stated sum is liquidated damage, that sum must be fixed as the basis of compen-

sation and substantially limited to it; for just compensation is recognized as the universal measure of damages not punitory. Parties may liquidate the amount by previous agreement. But when a stipulated sum is evidently not based on that principle, the intention to liquidate damages will either be found not to exist, or will be disregarded, and the stated sum treated as a penalty. Contracts are not made to be broken; and hence, when parties provide for consequences of a breach, they proceed with less caution than if that event was certain, and they were fixing a sum absolutely to be paid. The intention in all such cases is material; but to prevent a stated sum from being treated as a penalty, the intention should be apparent to liquidate damages in the sense of making just compensation; it is not enough that the parties express the intention that the stated sum shall be paid in case of a violation of the contract. A penalty is not converted into liquidated damages by the intention that it be paid; it is intrinsically a different thing, and the intention that it be paid cannot alter its nature. A bond, literally construed, imports an intention that the penalty shall be paid if there be default in the performance of the condition; and formerly that was the legal effect. Courts of law, now, however, administer the same equity to relieve from penalties in other forms of contract as from those in bonds. The evidence of an intention to measure the damage, therefore, is seldom satisfactory when the amount stated varies materially from a just estimate of the actual loss finally sustained." (Pages 480, 481.)

See also, especially, 3 Parsons on Contracts (16th ed.), page 156, *et seq.*

Many courts hold that the intention of the parties must govern, but say that if the damages stipulated to be paid, received or recovered on the breach of the contract are out of proportion to the actual damages that might be sustained, then that the parties could not in fact have intended liquidated damages but merely a penalty, whatever their language might be. Other courts hold that it makes no difference what the intention of the parties might be; that the nature of the contract itself must govern; and if the amount stipulated to be paid, received or recovered is out of all proportion to the actual damages that might be sustained, then that such amount must

be treated as a penalty, whatever may have been the intention of the parties; that in fact, and in the very nature of things, such amount would be a penalty, and could not be anything else; that the parties could not by misnaming the amount and calling it liquidated damages make it such. In this connection, the following language of Judge Christiancy, who delivered the opinion of the court in the case of *Jaquith v. Hudson*, 5 Mich. 123, 136, 137, is instructive:

"Again, the attempt to place this question upon the intention of the parties, and to make this the governing consideration, necessarily implies that, if the intention to make the sum stipulated damages should clearly appear, the court would enforce the contract according to that intention. To test this, let it be asked whether, in such a case, if it were *admitted* that the parties actually *intended* the sum to be considered as *stipulated damages*, and *not* as a penalty, would a court of law enforce it for the amount stipulated? Clearly, they could not, without going back to the technical and long-exploded doctrine which gave the whole penalty of the bond, without reference to the damages actually sustained. They would thus be simply changing the names of things, and enforcing, *under* the *name* of *stipulated damages*, what in its *own* nature is but a *penalty*. The real question in this class of cases will be found to be, not what the party *intended*, but whether the sum is, *in fact, in the nature* of a penalty; and this is to be determined by the magnitude of the sum, in connection with the subject-matter, and not at all by the words or the understanding of the parties. The intention of the parties cannot alter it. While courts of law gave the penalty of the bond, the parties intended the payment of the penalty as much as they now intend the payment of stipulated damages; it must, therefore, we think, be very obvious that the actual intention of the parties, in this class of cases, and relating to this point, is wholly immaterial; and though the courts have very generally professed to base their decisions upon the intention of the parties, that intention *is not*, and *cannot be, made* the *real basis* of *these decisions*. In endeavoring to reconcile their decisions with the actual intention of the parties, the courts have sometimes been compelled to use language wholly at war with any idea of interpretation, and to say 'that the parties must be considered as not meaning exactly what they say.' (*Horner v. Flint-*

*off*, 9 Mees. & W. 678, per Parke, B.)   May it not be said,' with at least equal propriety, that the courts have sometimes *said* what they *did not exactly mean?*"

And in the case of *Myer v. Hart*, 40 Mich. 517, 523, the supreme court of Michigan held as follows:

"Just compensation for the injury sustained is the principle at which the law aims, and the parties will not be permitted, by express stipulation, to set this principle aside."

We might quote further from the text-books and the reported cases, but we think the foregoing is sufficient; and from the foregoing it certainly follows that the plaintiff below, Kemper, cannot "recover" "the sum of $500 as liquidated and ascertained damages for the breach of this contract," notwithstanding such is the language of the contract.   If the defendant, Condon, had removed the building situated on lot 6 three feet north, and had then put the same in as good condition as it was before, he would have so completed his contract that not one cent of damage could be recovered from him; and to so remove such building and to put it in as good condition as it was before would not have cost to exceed $100. But suppose that Condon had removed the building, and then had failed to put the same in as good condition as it was before: he would have committed a breach of the contract, but the actual damages might not have been $25.   Then should the plaintiff, Kemper, recover the said sum of $500?   Or suppose that Condon had removed the house and attempted to put it in as good condition as it was before, but had failed to repair a lock or a small portion of the plastering, or a broken window, which repairing might not have cost $1: then should Kemper have the right to recover the said sum of $500?   All this shows that the parties did not have in contemplation the matter of actual compensatory damages when they stipulated that Kemper might recover $500 from Condon as liquidated and ascertained damages in case of a breach of the contract, but shows that in fact, though not in words, they fixed the sum of $500

Contract—
breach—liqui-
dated damages
—penalty.

as a penalty to cover all or any damages which might result from a breach of the contract.

The judgment of the court below will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.