[No. 10357.   Department One.   August 24, 1912.]

J. A. STONER, *Respondent*, v. FRANK W. SHULTZ,
*Appellant*.[1]

DAMAGES—LIQUIDATED DAMAGES OR PENALTY. A contract whereby
the vendor of capital stock of a corporation agreed to surrender up
three notes for $3,000 for cancellation, as liquidated damages in case
of his failure to effect a settlement of claims aggregating only
$1,800, is an agreement for a forfeiture or a penalty, and only the
actual damages sustained by its breach can be recovered; since a
larger sum agreed to be paid as security for a less sum cannot be
considered as liquidated damages, even if so designated in the con-
tract.

Appeal from a judgment of the superior court for Spo-
kane county, Kennan, J., entered December 13, 1911, in
favor of the plaintiff, notwithstanding the verdict of a jury
rendered in favor of the defendant, in an action upon a prom-
issory note.   Affirmed.

*Samuel Edelstein*, for appellant.

*Alex M. Winston* and *Fred H. Witt*, for respondent.

PARKER, J.—The plaintiff commenced this action seeking
recovery from the defendant upon a nonnegotiable promissory
note, executed in part payment of the purchase price of
shares of capital stock of the Standard Motor Car Company,
a corporation, of Spokane.   The execution of the note, to-
gether with two others representing the purchase price of
the stock, was admitted by the defendant; but he pleaded as
an affirmative defense, in substance, that, under his contract
with the plaintiff for the purchase of the stock in part pay-
ment of which the note sued upon was given, the plaintiff had
failed to do certain things agreed by him to be done which,
under the sale contract, were conditions precedent to the de-
fendant's becoming liable upon the notes; or in other words,
that the agreement contained in the contract was in effect

[1]Reported in 125 Pac. 1026.

for liquidated damages which would result to the defendant upon the failure of the plaintiff to do certain things agreed by him to be done, and that his failure in that regard resulted in the satisfaction of the debt which was evidenced by the three notes. A trial before the court and a jury resulted in a verdict in favor of the defendant. Thereupon the plaintiff moved for judgment notwithstanding the verdict, and in the alternative for a new trial. The court granted the motion for judgment notwithstanding the verdict and rendered judgment accordingly in favor of the plaintiff and against the defendant for the full amount of the note sued upon with interest, reciting in the judgment as grounds thereof the following:

"The court having heretofore on Friday, December 1st, 1911, announced his decision upon said motions to counsel for each of the parties hereto, and said decision being that the court believed that the provisions in the contract set up in the answer herein were provisions for a penalty and not for liquidated damages, the court thereupon announced, by reason thereof, the said verdict would be set aside and a new trial granted and that defendant might, if he elected so to do, amend his answer to show the actual damage, if any, suffered by defendant by reason of the breach or breaches, if any, by plaintiff of the covenants and conditions in said contract to be by him performed, and that if defendant did not elect to so amend, that judgment would be rendered, notwithstanding said verdict, for the reason that, as aforesaid, the provisions in said contract are, under the evidence, provisions for a penalty and not for liquidated damages, and the said defendant having elected to stand upon his said answer and declining to amend the same,

"It is by the court ordered, adjudged and decreed . . ."

From this disposition of the cause, the defendant has appealed.

There are certain undisputed facts disclosed by the record which we regard as determinative of the correctness of the court's decision. They are as follows: The Standard Motor Car Company is a corporation, with its principal place of business at Spokane, having a capital stock of $25,000. At

the time of making of the contract between the parties to
this action, portions of which are hereinafter quoted, appellant was the principal stockholder of the Standard Motor
Car Company, and then owned nearly all of the shares of
stock in that company, excepting thirty shares thereof of
the par value of $3,000 owned by respondent. The Standard Company then, and for some time prior thereto, had an
agency contract with the Stoddard-Dayton Motor Company of Los Angeles, Cal., for the sale of Stoddard-Dayton
automobiles in Spokane and its tributary territory. At that
time, and for some time prior thereto, respondent was the
general manager of the Standard Company, being actively
engaged in the conduct of its business, and was acquainted
with the Stoddard-Dayton people through his dealings with
that company. Appellant was not actively engaged in the
business of the Standard Company, though the principal
stockholder therein, and did not have any acquaintance with
the Stoddard-Dayton people. At that time, and for some
time prior thereto, there existed two controversies between
the Standard Company and the Stoddard-Dayton Company,
which, if not amicably adjusted, might result in the termination of the agency contract by the Stoddard-Dayton Company. If these controversies were amicably settled, it is apparent that all cause for or desire on the part of the Stoddard-Dayton Company to terminate the agency contract
would be removed. One of these controversies was because
of the refusal of the Standard Company to settle with the
Stoddard-Dayton Company the claim of that company for a
limousine body which had been shipped by it to the Standard
Company and for which it had made a charge of $1,080,
settlement being refused by the Standard Company upon the
terms demanded by the Stoddard-Dayton Company by reason
of defects in the body, claimed by the Standard Company to
exist.

The other of these controversies was because of the refusal
of the Standard Company to settle with the Stoddard-Dayton

Company the claim of that company amounting to approximately $700 for parts shipped by it to the Standard Company to carry in stock to supply broken parts of machines; the Standard Company insisting that these parts were only received by it on consignment, while the Stoddard-Dayton Company insisted that they were sold to the Standard Company and that it make payment therefor. It is plain from the record that the settlement of these two claims by the Standard Company with the Stoddard-Dayton Company would have removed all the differences existing between the two companies, and that nothing else threatened the termination of the agency contract. The affairs of the Standard Company being in this condition so far as its relation with the Stoddard-Dayton Company was concerned, on December 10, 1910, the parties to this action entered into a written contract for the sale by respondent of his 30 shares of stock to appellant, the portions of which contract material to our present inquiry are as follows:

"Memorandum of Agreement, entered into this 10th day of December, 1910, by and between Frank W. Shultz, first party, and J. A. Stoner, second party, Witnesseth:

"(1)    Second party shall immediately upon the execution and delivery of this agreement in duplicate, assign and deliver to the first party thirty shares of the capital stock of the Standard Motor Car Company, a corporation organized under the laws of the State of Washington, and also execute and deliver to the first party an assignment to the first party of all of the rights of the second party of every nature whatsoever created in favor of the second party under and by virtue of an agreement entered into between the second party and the Standard Motor Car Company, a corporation, as appears from the minutes of the trustees meeting of said company bearing date October 28th, 1909, wherein, among other things, the said company, in consideration of the services of the second party as general manager, the second party is to receive in addition to his salary, one-fourth of the profits of said corporation for the ensuing year, etc.

"(2)    Upon the delivery of said certificates of stock and the assignment aforesaid, the first party agrees to pay to

the second party the sum of $1,250, the receipt whereof is hereby acknowledged, and the first party will also sign and deliver his three promissory notes each payable to the second party and each in the sum of $1,000, bearing interest from date until paid at 8 per cent. per annum, one note payable on or before February 1, 1911; one note payable on or before March 1, 1911, and one note payable on or before April 1, 1911.

"(3)    That said notes and the cash payment aforesaid are given to the second party upon the express agreement and condition that the second party shall and will, on or before January 10, 1911, fully adjust and settle, to the satisfaction of the first party and the officers of the Standard Motor Car Co., each and all of the differences and disagreements now existing between the Standard Motor Car Co., and the Stoddard-Dayton Motor Company, of Los Angeles, Calif., a corporation organized under the laws of the state of California, and will also receive from the said Stoddard-Dayton Motor Co. and deliver to the first party a written assurance to the effect that said Stoddard-Dayton Motor Co. will fully and promptly comply with a fair and liberal construction of the terms of the Automobile Subagency Contract for the season of 1911 and the supplemental agreement thereto, both bearing date the 8th day of September, 1910, entered into between the Stoddard-Dayton Motor Company and the said Standard Motor Car Company, both of which said agreements are hereby referred to and made a part of this agreement to all intents and purposes as though herein set forth in full. It is further agreed that said written assurances shall be of such a nature as to satisfy the first party that the Standard Motor Car Company aforesaid will receive at the hands of the Stoddard-Dayton Motor Company the same prompt and satisfactory treatment for the season of 1911 as has been received by the said J. A. Stoner and the Standard Motor Car Company in the past before said disagreements now existing arose. The first party agrees that he and the remaining officers of the Standard Motor Car Company will assist the second party as far as reasonable·in bringing about an adjustment of said differences, and will comply with a fair and liberal construction of the terms of said automobile contract and supplement.

"(4)    It is further expressly understood and agreed be-

tween the parties hereto that in the event the second party
shall fail or refuse, within the time aforesaid, to fully comply
with the terms of the preceding paragraph, or in the event
the said Stoddard-Dayton Motor Company of Los Angeles,
California, shall fail or refuse to make an adjustment of the
differences and disagreements aforesaid, or shall fail or re-
fuse to give the written assurances aforesaid, then and in
either of said events the said second party agrees to accept
the said payment of $1,250 in full accord and satisfaction for
the stock aforesaid and the assignment aforesaid, and said
second party further agrees in either of said events to sur-
render up to the first party the three notes aforesaid for
cancellation, said unpaid three notes for $3,000 to be con-
sidered as liquidated damages sustained by the first party
by reason of the breach of the terms of this agreement afore-
said, and the first party shall be released from any and all
obligations to pay any further sum to the second party by
reason of the assignment of said stock and the assignment of
the rights of second party in said corporation."

On February 1, 1911, the date of the maturity of the first
note, this action was commenced by respondent to recover the
amount due thereon.    Upon the trial, appellant offered no
evidence of the amount of his actual damages sustained on
account of the failure of the respondent to settle the differ-
ences between the Standard Company to the Stoddard-Day-
ton Company, but relied entirely upon the provisions of the
stock sale contract above quoted referring to the conditions
upon which the notes were given and the so-called liquidated
damages, insisting that no proof of actual damages was re-
quired from him to successfully defend against the notes
sued upon, but that he was only required to prove that re-
spondent had failed to adjust the differences between the two
companies, in order to entirely defeat recovery of the debt
evidenced by the notes.    It is not claimed that respondent
was to adjust these differences at his own expense, but that
he was to adjust them upon the basis claimed as correct by
the Standard Company and without yielding to the demands
of the Stoddard-Dayton Company.    It is apparent that the
settlement of these differences was left in his hands because

of his acquaintance with the Stoddard-Dayton people. The verdict of the jury in favor of the defendant of course amounts to a finding that he did not settle these differences, which fact we will assume as proven. The verdict must have been by the jury rested alone upon this fact and the apparent letter of the stock sale contract, since there was no proof of actual damage to appellant offered by him.

It is at once manifest that these differences could have been completely adjusted by the Standard Company by paying the claims of the Stoddard Company, and thereby sustaining a possible loss in no event exceeding the amount claimed by the Stoddard-Dayton Company. That is, not exceeding the sums of $1,080 and $700, and in all probability much less; for it is evident that the limousine body and the parts in stock were of considerable value, and these of course would in any event have become the property of the Standard Company upon payment of these claims. It of course follows that the loss or damage to appellant by such a settlement would in no event have been more than these sums, as a stockholder of the Standard Company, since the value of his stock would not have been lessened more than the loss to the company from such a settlement. The evidence shows that these differences were thereafter settled by appellant for the Standard Company at a less loss than the amount of these sums, though that is of little moment here.

It seems to us that, when these parties entered into this contract for the sale of this stock, wherein respondent agreed to settle these differences, it could then be readily seen that the amount of damage which might result to appellant from a failure of respondent to perform that part of his contract would be readily ascertainable. It could even then be seen that the maximum amount of such damages could in no event exceed the total amount of the two claims of the Stoddard-Dayton Company, which it will be noticed did not exceed $1,800, and was approximately $1,200 less than the $3,000 indebtedness evidenced by the notes given by re-

spondent to appellant in part payment of the purchase price of the 30 shares of stock, all of which indebtedness he is now insisting was satisfied by respondent's failure to settle the differences between the two companies.

These facts, it seems to us, render the law of the case comparatively free from difficulty. Appellant's contentions are no different in principle than they would be were he now insisting that respondent owed him $3,000 as stipulated damages, and such damages in that amount were being set up by him as an offset against his indebtedness to respondent upon these notes. In its last analysis, his claim is that his debt is satisfied by liquidated damages, the amount of which is fixed by the stipulation of the stock sale contract, growing out of respondent's failure to perform certain things therein agreed to by him, and that appellant is thereby freed from the necessity of offering proof of his actual damages. Now if the stipulations of the contract are in effect valid stipulations providing for liquidated damages, appellant's position is well founded. But if they are in effect stipulations providing for a forfeiture as a penalty by respondent of the $3,000 due from him to appellant because of respondent's failure to effect a settlement of the differences between the two companies, then under well settled rules appellant can only recover, or offset as in this case, which amounts to the same thing, his actual damage caused by such failure. 1 Sutherland, Damages (3d ed), § 283.

That these stipulations are in effect agreements for a penalty in the sum of $3,000 to be suffered by respondent for failure to effect settlement of the differences between the two companies, which failure could in no event damage appellant more than $1,800, seems to us plain. This being true, the appellant is not entitled to enforce the whole of such penalty in satisfaction of damages, which as we have seen could in no event amount to but little more than half of the amount claimed by appellant, under the guise of agreed liquidated damages; but he is required to prove the amount of

his actual damages and can be awarded no more. The law controlling the rights of parties under contracts of this nature was quoted approvingly by this court from Pomeroy's Equity Jurisprudence, in *Johnson v. Cook*, 24 Wash. 474, 478, 64 Pac. 729, as follows:

"First. Wherever the payment of a smaller sum is secured by a larger, the larger sum thus contracted for can never be treated as liquidated damages, but must always be considered as a penalty.

"Second. Where an agreement is for the performance or nonperformance of only one act, and there is no adequate means of ascertaining the precise damage which may result from a violation, the parties may, if they please, by a separate clause of the contract, fix upon the amount of compensation payable by the defaulting party in case of a breach; and a stipulation inserted for such purpose will be treated as one for 'liquidated damages,' unless the intent be clear that it was designed to be only a penalty."

This doctrine is again noticed at some length in *Madler v. Silverstone*, 55 Wash. 159, 104 Pac. 165, 34 L. R. A. (N. S.) 1, where our previous decisions are reviewed.

It is true that it is stated in the contract that in the event of the failure of respondent to make settlement of the differences between the two companies "he is to surrender up to the first party the three notes above for cancellation, said unpaid three notes for $3,000 to be considered as liquidated damages sustained by the first party [appellant] . . . ." But the mere naming of the amount as "liquidated damages" does not necessarily make it so. We are not controlled by the mere name by which parties may designate an obligation of one to the other, when the substance of their contract shows that such name is erroneously used. *Erickson v. Green*, 47 Wash. 613-615, 92 Pac. 449; *Styers v. Stirrat & Goetz Inv. Co.*, 65 Wash. 676, 679, 118 Pac. 896; *Condon v. Kemper*, 47 Kan. 126, 27 Pac. 829, 13 L. R. A. 671. The latter case contains an exhaustive review of the subject, and together with the note in 13 L. R. A. is particularly appli-

cable as indicating the slight attention the courts will give to the name used by parties as designating their respective legal obligations when the true nature of such obligations is clearly deducible from the terms of their contract.

We are of the opinion that, in view of the admitted facts that the note sued upon was duly executed and delivered to respondent by appellant, that appellant has offered no evidence as to his actual damages by reason of respondent's failure to settle the difference between the two companies, and that the stipulations of the stock sale contract are in effect stipulations providing for a penalty rather than liquidated damages, respondent was entitled, as a matter of law, to a directed verdict in his favor for the amount due upon the note sued upon, or for a judgment to that effect notwithstanding the verdict, as was ultimately awarded to him by the trial court. It follows that the judgment should be affirmed. It is so ordered.

MOUNT, MORRIS, GOSE, and CHADWICK, JJ., concur.