## JOHN W. THOMPSON, Appellant, v. ST. CHARLES COUNTY.

**Division One, March 31, 1910.**

1. **SUIT ON CONTRACT: Performance: Waiver: Not Pleaded.** In a suit on a contract to build a court house alleging full performance, plaintiff cannot, without a plea of a waiver of certain provisions therein relating to an extension of time on account of alterations, obstructions and interferences with the work, introduce evidence to show defendant county waived the conditions on which those extensions were made to depend. The general rules is that where plaintiff must rely for recovery on performance of the terms of a contract, and performance is denied, he cannot show a waiver unless he pleads it; that the proof offered to show waiver in such case, does not correspond with the allegation, the latter being full performance, and the proof being non-performance with an excuse. In suits on insurance policies an exception is allowed, for reasons applicable especially to those cases; and the reason why the rule was not applied in a certain replevin suit where the only plea was a general denial is apparent, and that case can scarcely be said to be an exception.

2. ———: ———: ———: **Proof.** Even if waiver were pleaded, testimony tending only to show a breach of contract relating to the length of time for performance and various explanations of such breach, do not, in law, constitute proof of waiver. If the contract provided that an extension of time could be had only on written request and approval of the superintendent, and then only for delays caused by the default of other contractors, or by alterations in the plans, or fire, or bad weather, or strikes, testimony that the delays were caused by extras is not

pertinent, and if it fails to show the contractor made a request, either written or oral, for an extension, it is not proof of waiver.

3. ———: ———: **Extension of Time: Superintendent as Judge.** A provision in a contract for building a county court house which requires a written application for an extension of time to be made to the superintendent and gives him authority to determine whether the contractor is entitled thereto and the length of such extension, and allowing the contractor an appeal if dissatisfied to arbitrators, is reasonable, and enforcible unless the superintendent's award is the product of fraud, mistake sheer caprice or arbitrariness.

4. ———: **Tender: County Warrants.** A tender of a county warrant properly issued and executed, to the contractor for the amount due him under his contract for constructing a county court house, is a good and sufficient tender. Under the statutes which are a part of his contract, the county can pay only in warrants, and thereby he agreed to accept warrants in payment, whether they represent so much cash or not.

5. ———: ———: ———: **Objections.** Where the only objection made by the contractor when the county warrant was tendered to him in payment was to the amount thereof, and not to the character or form of the tender, he cannot subsequently be heard to object to the warrant as a sufficient tender. Unless the objection is made at the time of the tender that it is not made in money, that objection cannot be subsequently made.

6. ———: **Failure to Complete Within Time Stipulated: Penalty: Liquidated Damages.** The contract required the contractor to "wholly finish said work" of building a court house on or before a certain date, "and in default thereof the contractor shall pay to the owner ten dollars for every day thereafter that the said work shall remain unfinished as and for liquidated damages." *Held,* that the court did not err in refusing to permit the jury to assess the sum to be deducted at the actual damages the county suffered by the delay, but, whether the ten dollars per day in such contracts be considered a penalty or liquidated damages, it was a reasonable agreement under the circumstances, and should therefore be enforced as written.

Appeal from Lincoln Circuit Court.—*Hon. Jas. D. Barnett,* Judge.

**AFFIRMED.**

*Bond, Marshall & Bond* and *Jno. A. Talty* for appellant.

(1)    The circuit court erred in excluding testimony tending to prove that the defendant had waived the provisions of the contract requiring a written demand for an extension of time on account of alterations in the work, obstructions, interferences, etc.  Proof of waiver is admissible under an allegation of performance of a contract.  Andrus v. Insurance Assn., 168 Mo. 161; Suess v. Insurance Co., 193 Mo. 570.   (2) The circuit court erred in holding that a warrant of the county court constituted a legal tender.   Sections 1564 and 1565, R. S. 1899, regulate tenders in Missouri, and do not include county warrants, checks, or even certified drafts, as legal tender for the payment of a debt.   In Raymond v. McKinney, 58 Mo. App. 306, it was stated that the parties seemed to concede and the authorities seem to hold that a tender of money by check is good, if the only objection is that the amount is insufficient.   But such a statement of the law is incorrect in Missouri, and was probably made in that case because the parties conceded it to be the law.   Williams v. Rorer, 7 Mo. 558, referred to in the case cited from the Court of Appeals supra, was a case where the tender was made in bank bills and not by a check or warrant.   In Shipp v. Stacker, 8 Mo. 145, the tender was by a check of the debtor drawn on the creditor (an insurance company) that had on deposit cash of the debtor, for the amount of such deposit, supplemented by cash to make up the full amount due.   These Missouri cases therefore do not support the doctrine announced by the Kansas City Court of Appeals.   Landis v. Saxton, 89 Mo. 375, has also been referred to as authority for the statement of the law made by the Kansas City Court of Appeals.   But an examination of that case will show that the only question decided was whether a tender had the effect

of destroying the security for the debt. There was no question in the case as to the character of the tender, and it does not even appear from the report whether the tender was or was not in cash. The general rules of law require that when tender is made of a debt it must be in money and not by check or otherwise. 28 Am. and Eng. Ency. Law, 6. (3) The circuit court erred in holding that the ten dollars specified in the contract constituted liquidated damages and not a penalty, and in instructing the jury to deduct ten dollars a day, aggregating $3330, from the $5349 concededly due the plaintiff as the last payment under his contract, and also erred in refusing to give a peremptory instruction to the jury to return a verdict for the plaintiff for $5349, because there was no evidence showing what amount, if any, the defendant had been damaged by the delay. Cochran v. Railroad, 113 Mo. 359. The penalty here allowed amounts to nearly ten per cent of the contract price. There is no damage shown. On the contrary, the defendant occupied the old courthouse and paid no rent except for the offices of the recorder and county clerk, and it is not shown how much rent was paid for those offices. On its face, therefore, it is apparent that the damages allowed are unjust and disproportionate to any possible damage or injury the defendant may have suffered, and consequently the recovery is unconscionable. Under the rule laid down in Cochran v. Railroad, 113 Mo. 359, the ten dollars per day should have been construed as a penalty and not as liquidated damages.

*T. C. Bruere* for respondent.

(1) Appellant having made no objection to the warrant, at the time it was tendered him, on the ground that it was not money, waived his right to a legal tender in money, and cannot now raise the question. Beckham v. Puckett, 88 Mo. App. 636; Berthold

v. Reyburn, 37 Mo. 586; Whelan v. Reilly, 61 Mo. 568; Walsh v. Lewis Exposition, 101 Mo. 534; Stephenson v. Kilpatrick, 166 Mo. 262. (2) The stipulation contained in the contract, that in default of the completion of the building within the time limited, the appellant should pay to respondent ten dollars for every day thereafter that the work on said building should remain unfinished, as and for liquidated damages, was intended by the parties as one for liquidated damages, and there is nothing in the transcript or in the contract that would justify the court in giving the contract a different construction. Cochran v. Railroad, 113 Mo. 359; Morse v. Rathburn, 42 Mo. 594; Redlands Assn. v. Gorman, 161 Mo. 203; Trust Co. v. York, 81 Mo. App. 342.

LAMM, P. J.—Plaintiff contracted in writing to build a courthouse for the county of St: Charles for the sum of $37,349, to be paid in instalments. The last instalment was to be $5349. Alleging full performance and claiming the last instalment with certain items of extra work, plaintiff sued in one count on the contract and in another on a *quantum meruit* for $5541.84. The latter count and the extras were finally abandoned and the suit stood as one for said last contract instalment, *viz.*, $5349. Verdict and judgment for $2019. Plaintiff appeals.

The answer admits the contract, but denies performance, etc., and pleads a provision requiring the work completed by December 31, 1901, and that for a default in that regard plaintiff should pay defendant "as liquidated damages" ten dollars for each and every day from that date until the building was completed; that plaintiff was given an extension of time, *viz.*, of 26 days from December 31, 1901, to January 26, 1902, but breached the contract in that he did not complete the work until December 26, 1902, and that the liquidated damages for such failure were $3330;

that the balance due plaintiff was $2019; and that on February 9, 1903, defendant tendered plaintiff said sum and has ever since been ready to pay the same and now brings it into court.

By reply plaintiff puts a construction on the contract, viz., that the "liquidated damages" were merely a *penalty,* that the real damages from default in time are susceptible of easy calculation and ascertainment with certainty, etc. It then, in a dozen specifications, makes allegations explaining how time was lost. One was to the effect that 55 days were lost because defendant neglected to give plaintiff possession of the premises and the lines and level of the building on the 1st day of March, 1901, as provided in the sixth clause of the contract (presently to be set forth). The seventh clause of the contract, as will be seen in a little while, provided for an extension of time in certain contingencies by written claim therefor at the time with an award by the superintendent certifying the amount of the additional time, or, on failure to agree, an arbitration as provided in the third clause of the contract.

The reply did not plead a claim made for additional time, either oral or in writing, or a waiver of a written claim or of the arbitration clause, or any attempt to arbitrate, or to obtain an allowance from the superintendent, or any fraud, mistake, caprice. or wrongful or arbitrary conduct on the part of the superintendent in that regard. In fact, it says nothing about a claim, award or arbitration. It merely sets forth that because of certain errors, extra work, changes and alterations and because of a failure to approve plaintiff's bond, 289 days were lost, for which plaintiff should be allowed

The contract bore date February 11, 1901. The clauses material here are the third, sixth and seventh.

The third provides for changes, omissions, etc.,

and it was thereby agreed that the superintendent should make a fair and reasonable valuation of the work added or omitted and the contract price should be increased or diminished thereby as the case may be. In case such valuation was not agreed to, the contractor should go on under the written order of the superintendent and do the work and the valuation to be added or subtracted should be referred to three disinterested arbitrators, one to be appointed by each party and the two to choose a referee—a decision of any two to be final and binding, the expenses to be share and share alike.

The sixth and seventh follow:

"Sixth: The contractor shall and will proceed with the said work, and every part and detail thereof, in a prompt and diligent manner, and shall and will wholly finish the said work according to the said drawings and specifications, and this contract, on or before the thirty-first day of December, in the year one thousand nine hundred and one (provided, that possession of the premises be given the contractors, and lines and levels of the building furnished him on or before the first day of March, in the year one thousand nine hundred and one), and in default thereof the contractor shall pay to the owner ten dollars for every day thereafter that the said work shall remain unfinished as and for liquidated damages.

"Seventh: Should the contractor be obstructed or delayed in the prosecution or completion of the work by the neglect, delay or default of any other contractor; or by any alteration which may be required in the said work; or by any damages which may happen thereto by fire, or by the usual action of the elements, or otherwise; or by the abandonment of the work by the employees through no fault of the contractor, then there shall be an allowance of additional time beyond the date set for the completion of said work; but no such allowance shall be made

unless a claim is presented in writing at the time of such obstruction or delay. The superintendent shall award and certify the amount of additional time to be allowed; in which case the contractor shall be released from the payment of the stipulated damages for the additional time so certified and no more. The contractor may appeal from such award to arbitrators, constituted as provided in article 3 of this contract.''

Mr. Legg was architect and superintendent of the building. On behalf of plaintiff there was some evidence tending to show that the lines and level to be given by defendant (see the sixth clause of the contract supra) were not given until sometime in April, 1901, instead of before March 1st, as stipulated. Contra, defendant's testimony tended to show they were given strictly in accordance with the sixth clause, i. e., before March 1, 1901. That issue was well put to the jury and found against plaintiff.

During a long running colloquy between court and counsel upon the legal effect of said clause seven, it was suggested by the court that plaintiff would be allowed to prove any delay caused by any action of superintendent Legg outside of the terms of the contract, the court saying, *inter alia,* ''Now if there are other delays, resulting from any affirmative interference on the part of the owner or on the part of the superintendent, who under the terms of this contract represents the owner, delays that do not fall within the terms of this section (clause 7) but are caused in other ways and for other reasons, then the contract would simply be silent in that regard, and the contractor would be entitled to show those delays, I think, under the general provisions of common law, that where there is a contract to do a certain thing within a certain time that contract would always be construed with reference to his course of operation being uninterrupted by the other party.'' Plaintiff did not accept the offer made by the court to show any de-

lays not falling within the terms of clause seven, but did make offers to show delays caused by alterations, extras, etc., contemplated by that clause. These offers were refused unless plaintiff promised to bring himself within the provisions of that clause relating to a claim of allowance of additional time in writing made to the superintendent, to be followed by an award from him or by arbitration in case of a difference as set forth in that clause. Plaintiff made no attempt to show either a claim for an allowance of time made in writing or by word of mouth to the superintendent or any difference between him and the superintendent in regard to such allowance or any demand of arbitration, or any arbitration or attempt to arbitrate as the result of a difference. Accordingly, the offers of evidence tending to show delays of time were rejected except in regard to furnishing the lines and level.

There was testimony that no additional time was asked for or agreed to during the entire construction of the building except that admitted in the answer, to-wit, from December 31, 1901, to January 26, 1902.

It was shown that all the contract payments as well as payments for extra work were made except the last instalment.

It was further shown that a Mr. Shantz represented plaintiff as agent in transacting the business with the county court of St. Charles county. On February 9, 1903, Shantz demanded of the county court plaintiff's last instalment. The county court deducted ten dollars for each day plaintiff failed to perform his contract after the first extension of time (this, on the strength of a report made by its superintendent), drew a warrant in due form of law for $2019, the balance, and tendered it to Shantz, the only objection from him being said deduction. No objection was made to the tender of a warrant instead of actual cash. Shantz took time to telephone his principal and then on his

behalf refused the tender because too small.   At the trial plaintiff's counsel objected to the introduction of the warrant in evidence; because (quoting) "this paper is not a legal tender; not a tender contemplated by the statute."   The objection was overruled, the point saved, and the warrant was admitted in evidence.

Plaintiff was allowed to show that the old courthouse, except rooms occupied by two of the county officers, was left standing during the construction of the new one and was occupied by the courts and county officers of St. Charles county.   He then undertook to show the rents paid for the use of two offices for those officers whose rooms were demolished—this on the theory that the contract damages were not liquidated, but were a penalty, and that the measure of defendant's damages would be outlay in rents.   The evidence was rejected, the court taking the view that the damages were liquidated by the contract.   After the new courthouse was completed the old one stood idle for awhile and was then razed.

The contract does not contemplate that plaintiff shall furnish the inside furnishings of the building, furnace, stair, furniture, plumbing, etc., but only contemplated that he should do and furnish the excavating, concrete, rubble, range and ashler, cut stone, brick, terra cotta, window frames, structural iron and wood work, ceiling joists and all woodwork above same, roofing sheet material work and everything necessary to construct the walls, cornices, gutters, conductors and roofs of building, dome and porches of the St. Charles county courthouse, furnishing the labor and material, scaffolding, implements and cartage necessary for the due performance of the work in accordance with drawings and specifications.

Plaintiff's instructions were drawn on the theory that the contract provided for a penalty and not for

liquidated damages. The court refused them and plaintiff saved the point.

The court then gave, over plaintiff's objections, instructions on the contrary theory, also on the question of tender favorable to defendant's theory.

On the foregoing record plaintiff assigns error, in substance, as follows: *First,* in excluding testimony tending to prove that defendant waived the provisions of the contract relating to an extension of time on account of alterations, obstructions and interferences with the work; *second,* in holding that the county warrant read in evidence was a legal tender; and *third,* in holding that the ten dollars per day was liquidated damages and not a penalty.

Of these *seriatim*:

I. The question on the exclusion of testimony splits naturally into two parts. One relates to pleading, the other to the testimony itself.

(a) Plaintiff did not plead a waiver of any contract provision, contra he alleged performance. Counsel argue that under a plea of full performance he was entitled to show a waiver of clause seven of the contract and they rely on certain insurance cases. Those cases hold that under a plea of full performance by plaintiff of policy provisions and a denial of performance by defendant, coupled with specifications of defaults and breaches, the plaintiff may show a waiver without a plea of one. The general rule is that where plaintiff must rely for recovery on performance of the terms of a contract, and performance is denied, he cannot show a waiver unless he pleads it; that the proof offered in such case does not correspond with the allegation, the latter being full performance, the former, non-performance with an excuse. The fairness and reason of this general rule are obvious and need little reinforcement. It is a doctrine of this court. [Nichols, Shep-

herd and Co. v. Larkin, 79 Mo. 264, and cases cited; Lanitz v. King, 93 Mo. 513; McCullough v. Phoenix Insurance Co., 113 Mo. l. c. 616 *et seq.*] In the latter case, referring to the necessity of pleading a waiver where recovery is sought on a contract, we said: "This is unquestionably the rule, even in this State, *in regard to all kinds of actions except on policies of insurance,* as the case at bar. It has been uniformly held by this court that, under the allegations in the petition that all of the conditions of the policy have been complied with, proof of waiver is permissible, and is proof of performance, within the meaning of the conditions of the policy." In James v. Mutual Reserve Fund Life Assn., 148 Mo. l. c. 10, in speaking of such insurance rule (somewhat by way of apology) we said: "This rule has obtained in this State for such a long period of time that the litigants have a right to assume that it will continue to be followed, notwithstanding that it is apparently an exception to the general rules of pleading applicable to other cases." In Andrus v. Insurance Assn., 168 Mo. l. c. 161, it was remarked that "for over fifty years the practice has obtained in this State in suits upon insurance policies, to admit proof of waiver without requiring the waiver relied on to be alleged in the pleadings." See, in this connection, Suess v. Insurance Co., 193 Mo. l. c. 570 *et seq.*

In the law of contracts insurance policies are a class unto themselves. They are prepared by the wary, accepted by the unwary. The principles of insurance are abstruse and highly technical in many phases, understood by those who tender the policies, not by those who accept them. The plain indemnity features of policies are not infrequently compassed about with rows of impaling provisions, exceptions, provisos and forfeitures intended to defeat liability. But it is not necessary to defend the rule permitting a plaintiff to show waiver in an insurance case under a plea of full performance. Enough that such un-

doubtedly is the rule in Missouri, and this court, as pointed out, inclines to hold it impregnable to assault somewhat on the ground of its antiquity and the fact that parties, in insurance contracts, contract with an eye to the rule. But we have been cited to no case and know of none enlarging the doctrine and making it applicable to other cases on contracts where performance of provisions is alleged and which provisions are conditions precedent to the right of recovery. We recall one case in replevin where a general denial was filed, and in which it was held that a waiver might be shown under such general denial (Oester v. Sitlington, 115 Mo. 1. c. 257), but the proposition there ruled was based on the premise that "a general denial puts in issue plaintiff's right to the possession of the property at the commencement of the action and every collateral fact necessary to establish the same." The reason of that case does not assist plaintiff in this, and we rule evidence of waiver not admissible, absent a plea of waiver.

(b) It must also be held there was no proof tendered that, in law, would constitute a waiver of the provisions of the seventh clause of the contract. At the very utmost it merely tended to show a breach of the contract relating to time and various explanations for such breach. It did not touch the point of waiver or involve any element of estoppel. It did not tend to show that plaintiff made any demand of any kind for an allowance of time or any attempt to procure a present allowance from the superintendent, even by word of mouth, let alone by a written claim, or to show that there was any disagreement followed by an arbitration or an attempt at arbitration, nor did it tend to show any arbitrary, unfair, capricious or fraudulent conduct on the part of the superintendent in that behalf; nor did defendant take any position or do anything precluding the necessity for a claim

for allowance of time or calculated to mislead plaintiff into a belief that such claim was not necessary.

Attending to the language of the seventh clause of the contract it is formal, explicit and full. It clearly contemplates a claim by plaintiff for an allowance of time, not by way of afterthought, but made at the time. It was to be made to the superintendent and he was to make an award and certificate. It states that in such event "the contractor shall be released from the payment of the stipulated damages for the additional time so certified *and no more.*" It next provides for arbitration if the allowance be unsatisfactory to the contractor. These provisions tended to conduct above-board and in the open. They afforded the data upon which the county court could settle and whereby it could show to the people of the county the grounds upon which it paid out the people's money.

The record shows that at the trial counsel took the position that this provision of the contract was not enforceable since it constituted the superintendent, who was the agent of the defendant, a trier of the fact and a judge on the issue of fact. But we do not understand counsel to now press that view of it. If we are mistaken in this, the position is unsound. Such provisions are common in construction contracts and in accordance with trade usage. *Consensus facit legem.* They are not obnoxious to good morals or the policy of the law and parties *sui juris* and acting at arms' length may bind themselves in that way if they choose. [Williams v. Railroad, 112 Mo. 463.] Such provisions are reasonable working ones. Contracting parties in construction work must have some working theory to settle disputes in the many details incident to construction, and no good reason can be given why they may not select a person to settle them out of hand and let the work go on. His award is binding unless the product of fraud, mistake or sheer caprice and

arbitrariness. But in this case there was a provision in the nature of a safety valve providing for an appeal to arbitrators if that course be considered expedient or necessary.

The point is ruled against plaintiff.

II. The ruling *nisi* on the question of tender was well enough. Under our statutory scheme not a dollar can be paid from the treasury of a county on a claim except through a warrant. Such warrants are the only legal vouchers for the payment of public money. Our statutes contemplate that county warrants should be drawn in the name of the person presenting a claim for payment, and once a year county courts are required to make a full showing to the people in this regard. [R. S. 1899, secs. 6790, 6792, 6793, 6796 and *post.*] These laws must be read into plaintiff's contract the same as if written in so many words. In this view plaintiff contracted to receive a county warrant. When one was tendered to him the tender was within the terms and purview of the contract. It will not do for plaintiff to say, as he does, that county warrants may be at a discount and therefore may not represent cash. Plaintiff should have looked before he leaped and considered that view when he contracted with the county. He had the option to contract or not. When he did contract he put his neck into the yoke of agreeing to accept the only means of payment provided by the statutes, *viz.,* warrants.

But the ruling may be sustained on another ground. When the tender of the warrant was made, the only objection was the amount, not the character or form of the tender. The objection made at the time became, therefore, the only one available to plaintiff on the form of the tender. Who does not speak when he should may not when he would. "The tender should be in money made lawful by the State in which it is offered. But if it is offered in bank bills which

are current and good, and there is no objection to them at the time on the ground that they are not money, it will be considered so far an objection of form that it cannot afterwards be advanced." [2 Par. on Con., (9 Ed.), bottom p. 798.] In support of the text the author cites some English cases and the editor, Mr. Gould, cites three American cases: Walsh v. St. Louis Assn., 101 Mo. 534; Duffy v. O'Donovan, 46 N. Y. 223; Harriman v. Meyer, 45 Ark. 37. In the Walsh case we said: "The defendant, it is true, did not tender the money, only its check upon the bank with which it transacted its business. . . . The plaintiff refused to receive the money, not because it was tendered by way of check, but because he claimed the appointment of architect and superintendent. By declining to accept the award of $500, the plaintiff waived the production of money" (p. 548). The Arkansas case put the matter on the ground of estoppel, one of the head notes reading: "Where payment of a purchaser's bid for property sold at auction is tendered in an order on a third party, and is refused by the owner of the property on the sole ground that the sale was for an inadequate price, he cannot in a subsequent suit for the property object that the tender was not in ready money." In the New York case, a tender was made by check duly certified. The refusal was upon the ground that the time of performance had passed. On that state of facts it was ruled that the right to demand money was waived because the refusal was not put upon the ground that it was not in money. To the same effect are Beckham v. Puckett, 88 Mo. App. 636 and Whelan v. Reilly, 61 Mo. l. c. 568 *et seq.* See also, Berthold v. Reyburn, 37 Mo. 586.

III. Finally we come to a much vexed question upon which courts have been unable to hold a voice even and harmonious, *viz.*, that of "penalty" as over against "liquidated damages." The court construed

the contract to mean what it says, namely, a ten dollar per diem deduction for each day of default in completing the building, as liquidated damages. Counsel for plaintiff argue that the right construction is that the liquidated damages stipulated for, at bottom, are but a penalty, and that defendant was entitled to a rebate only for those damages it actually suffered and could prove. In other words, that the amount of damages should be determined by the jury and be predicated not of the stipulated sum but on proof showing their actual extent. Therefore, they say, the court erred in excluding the testimony in that behalf and again in instructing the jury.

If fraud be once defined by hard-and-fast rules the versatility of men would soon invent schemes quite outside of the definition. Accordingly, courts match their ingenuity against that of fraudfeasors by refusing to define fraud except in generalities. For like reason the "no-definition" rule has been applied to penalties and liquidated damages. In Moore v. Platte County, 8 Mo. l. c. 473, TOMPKINS, J., said, with the concurrence of his learned brethren: "The books furnish no very certain rule, and whether the parties call it a penalty or liquidated damages does not seem to have much influence with the courts in ascertaining the intentions of the parties as expressed in the contract. The courts seem rather to lean against construing agreements so as to compel the parties to pay the sum as stipulated damages, and are rather disposed to regard the sum of money agreed to be paid as a penalty to enforce the performance of the contract." In Gower v. Saltmarsh, 11 Mo. l. c. 272-3, NAPTON, J., observes: "It is not easy to extract from the adjudged cases any general rule by which penalties are to be distinguished from liquidated damages. Judge COWEN in his note to Spencer v. Tilden, 5 Cow. 144, thinks that no general rule ought to be adopted, at least in relation to the forms of language in which such con-

tracts may be expressed. If any particular form of words be sanctioned by the courts as sufficient to constitute fixed damages, the parties will of course adopt this form. The principle which that learned judge thought a sound one, and proper to be acted on, was the rule stated by Holt in his note to Barton v. Glover, Holt's N. P. R. 43: 'Where a sum of money, whether in the name of a penalty or otherwise, is introduced in a covenant or agreement, merely to secure the enjoyment of a collateral object, the enjoyment of the object is considered as the principal intent of the deed or contract, and the penalty only as accessory, and therefore only to secure the damage really incurred.' " But recognizing that freedom to contract is a tender point with Anglo-Saxon laws and peoples to be zealously guarded Judge NAPTON remarks that: "Perhaps this rule, if understood without qualification, may infringe upon the rights of parties to make their own contracts." And he goes on to point out that where the damages which may result from non-performance "are in their nature uncertain and rather depending in the opinion or caprice of individuals, the parties may unquestionably agree between themselves what those damages shall be, and the courts will not interfere." He then, out of abundance of caution, hastens to modify the general proposition: "But where a party stipulates to do several things, in a manner and at a time specified, and a failure in any one of them, either as to the manner in which the work is done or the time by which it is finished, is to be attended with the forfeiture of the entire sum agreed upon, whether it be denominated a penalty or liquidated damages, the courts incline to construe it as a penalty. They will not presume that it was the intention of the parties to exact a sum greatly disproportioned to the damages really sustained."

We have quoted thus extensively from the early Missouri fathers because, though old, the principles

announced by them are neither time-worn nor archaic. They are the sum of the matter and live verities of modern law. As exemplified in later cases, it will appear to students in jurisprudence that there is no new thing under the sun in that behalf. [Basye v. Ambrose, 28 Mo. 39; Hammer v. Breidenbach, 31 Mo. 49; Morse v. Rathburn, 42 Mo. 594; Hamaker v. Schroers, 49 Mo. 406; May v. Crawford, 142 Mo. 390; May v. Crawford, 150 Mo. 504; Cochran v. Railroad, 113 Mo. 359; Boulware v. Crohn, 122 Mo. App. 571; Menges v. Piano Co., 96 Mo. App. 283; Railroad v. Jefferson Stone Co., 90 Mo. App. 171; Tinkham v. Satori, 44 Mo. App. 659.]

In the exposition of this matter it will be found that each case is determined on its own facts; that one controlling factor is to get at the real intendment of the parties as gathered not only from their language but from the subject-matter and the results to be attained; that the courts incline toward a construction in favor of a penalty as against liquidated damages, at least where there is doubt or where a strict construction of the contract language would work absurdity or oppression, for instance, where the damages are so extortionate as to shock a sense of justice, and where the actual damage can be assessed by known rules or with reasonable certainty; that the situation of the parties and the course and usage of business are to have some weight; and that, where the justice of the case cries out for it, liquidated damages may be considered a penalty and *vice versa*, the strict language of the contract giving way to the majesty of justice, and liability under the contract being pared down by an inquiry into the actual injury suffered, by interpreting the meaning of the parties to be just rather than unjust. "They mistake," says Scott, J., with animation in Basye v. Ambrose, supra, "the object and temper of our jurisprudence who, while maintaining that men in making all contracts have a right to stipulate for

liquidated damages regardless of the disproportion to the sum resulting from such a breach of the contract, insist that it would be hard if men were not permitted to make their own bargains.  No system of laws would command our respect or secure our willing obedience which did not to some extent provide against the mischiefs resulting from improvidence, carelessness, inexperience and undue expectations on one side, and skill, avarice and a gross violation of the principles of honesty and fair dealing on the other.  The folly of one in making a wild and reckless stipulation will not justify gross oppression in another.  A just man when he sees one in a situation in which he is prepared to make a contract which must grind and oppress him, will not take advantage of his state of mind and enrich himself by his folly and want of experience.  It has been remarked that in reason, in conscience, in natural equity, there is no ground to say, because a man has stipulated for a penalty in case of his omission to do a particular act (the real object of the parties being the performance of the act), that if he omits to do the act he shall suffer an enormous loss, wholly disproportionate to the injury to the other party.''

Scholars will recall two celebrated old cases showing the stiff aversion of courts to ''catching bargains.'' One of them, James v. Morgan, is the ''horse shoe'' case decided during the times of Sir Matthew Hale (1 Levinz, Rep. 111).  Morgan agreed to pay James a barleycorn a nail for a horse, doubling it every nail in the shoes of the horse, thirty-two in all.  It was computed that at that price Morgan agreed to pay five hundred quarters of barley.  James sued in assumpsit accordingly.  Morgan pleaded non-assumpsit and HYDE, Justice, ''directed the jury to give the value of the horse in damages, being eight pounds, and,'' the report laconically reads, ''so they did.''  The other is the ''grain of rye'' case, Thornborough v. Whitacre, 6 Mod. 305.  The report runs thus: ''Assumpsit.  That

in consideration of half a crown by the plaintiff in hand paid to the defendant, he promised to pay two grains of rye upon Monday the twenty-ninth of March in such a year, four grains the next Monday after, and so on by progressional arithmetic every Monday for a year; and *non assumpsit* pleaded. *Per Curiam,* upon motion: let them go to trial; and though this would amount to a vast quantity, yet the jury will consider of the folly of the defendant, and give but reasonable damages against him."

We are of the opinion that by any recognized test the trial court well decided the point. The damages were not exorbitant, or disproportioned to the amount likely to result. They were not a large gross sum to be forfeited for a default in a trivial matter. To stipulate for and pay reasonable liquidated damages for the non-completion of an important building is in accordance with trade usage. There is nothing in the contract to show that these damages were a mere security for the performance of the work as agreed. The language employed is aptly chosen to exclude the idea of a mere penalty. The damages resulting from a failure to build a courthouse on time are by no means easy of ascertainment by certain fixed rules. If we should say the measure of damages was the rental value of a new court house for the term uncompleted, how would that be ascertained by certain rules? Who would rent a court house for business ends? If we should say the measure of damages was simply the amount of outlay in the payment of rent for the two rooms demolished, we would exclude all consideration of the dangers presumably surrounding the old building because not fire-proof, because the records of the county were presumably subject to loss and deterioration from exposure to thieves, fire, and bad sanitary conditions. Are the conveniences of a new, well appointed court house to courts, to officers and to the public not within the purview of contracting

parties, or the inconveniences of an inadequate and antique building not within such purview? If we should consider the sum invested in the building and allow the damages as interest on the capital, the amount is not disproportionate under the rule in Cochran v. Railway Co., 113 Mo. supra. Having regard to all these matters this plaintiff voluntarily made a fair contract with defendant putting their own estimate on the damages. Let him keep his word by standing by his contract.

We have ignored an imperfect abstract, and have allowed the case to break on its merits.

The judgment is affirmed. All concur.