SIDES CONSTRUCTION COMPANY,
Plaintiff-Appellant,

v.

CITY OF SCOTT CITY, Missouri,
Defendant-Respondent.

No. 10945.

Missouri Court of Appeals,
Southern District,
Division Three.

April 20, 1979.

Motion for Rehearing or to Transfer to Supreme Court Overruled May 7, 1979.

Application to Transfer Denied
June 19, 1979.

---

A. Yes."

A. M. Spradling, III, Spradling & Spradling, Cape Girardeau, for plaintiff-appellant.

Thomas L. Arnold, Benton, for defendant-respondent.

GREENE, Judge.

Plaintiff, on September 24, 1973, entered into a construction contract with defendant city. The contract provided that plaintiff construct a swimming pool, bathhouse, and related items in a city park complex at Scott City, Missouri, for a price of $274,000. The contract specified that the work would be completed within 360 calendar days. The completion date was September 20, 1974.

Article IV of the contract provided that, "In conformity with the General Conditions and Special Conditions of the specifications the amount of liquidated damages for this contract shall be *Fifty* Dollars ($50.00) per day."

General Condition 28(1) of the contract provided as follows: "Time is an essential element of the contract, and it is therefore important that the work be pressed vigorously to completion. Should the Contractor or, in the case of default, the surety fail to complete the work within the time specified in the Contract, or within such extra time as may be allowed in the manner set out in the preceding sections, a deduction of an amount as set forth in the Special Conditions will be made for each and every *calendar* day that such contract remains uncompleted after the time allowed for the completion. The said amount set forth in the Special Conditions is hereby agreed upon as liquidated damages for loss to the Owner and the public due to the obstruction of traffic, interference with use of existing or new facilities, and increased cost of engi-

neering, administration, supervision, inspection, etc., after the expiration of the time stipulated in the Contract, and will be deducted from any money due to the Contractor under the Contract." Special Condition 15 of the contract provided as follows: "15. Liquidated Damages: In accordance with the provisions of the 'General Conditions' the Contractor shall pay to the Owner, as and for liquidated damages and not as a penalty, the sum of *Fifty* Dollars ($50.00) for each and every calendar day that the Contractor shall be in default of the schedule set forth in the Contractor's Proposal, unless extensions of time granted by the Owner specifically provide for the waiving of liquidated damages during and over such period of time extension or any part thereof. The Contractor shall set forth in the space provided in the proposal the completion period in calendar days which he considers necessary to satisfactorily complete the work included and described in these Plans and Specifications."

A request for an extension of time to complete the project was made by plaintiff and granted by defendant. The agreed date for completion, as extended, was December 15, 1974. The work progressed, but was not completed, or accepted by the defendant until May 30, 1975. No further extension of time had been requested by plaintiff, or granted by defendant. Upon completion of the project, defendant withheld the sum of $8,300 from money due plaintiff, which sum allegedly represented liquidated damages due defendant under the contract, computed at the rate of $50 a day for 166 days.

Plaintiff then filed suit against defendant in the Circuit Court of Scott County seeking recovery of the $8,300 in question, plus interest. Plaintiff had previously demanded full payment from defendant, and was refused. Plaintiff, in its pleadings, contended that Article IV of the contract (the liquidated damages clause) was unenforceable and void, as not representing any true or realistic damages suffered by defendant; that defendant suffered no actual damages by plaintiff's failure to complete the project by December 15, 1974; that

defendant's failure to bring in water and sewer lines to the swimming pool site, prior to May of 1975 caused the completion of the project to be delayed without fault of the plaintiff, and that the withholding of the $8,300 by defendant was arbitrary, capricious and improper since said amount was a penalty, and was not liquidated damages.

Defendant, in its pleadings, admitted that it had withheld the $8,300 but contended that it was entitled to such sum under the provisions of the contract and the General and Special Conditions that were a part of the contract. Defendant denied that it owed plaintiff any money whatsoever. Defendant did not plead that it had suffered any actual damages by failure of plaintiff to complete the contract by December 15, 1974.

The case was tried before the court without a jury. In addition to a stipulation regarding the contract's execution, its completion dates, and the contract extension, some additional facts were introduced into evidence at the time of trial. Those facts were as follows. The pool in question was an open air unheated pool. Ninety-five to ninety-eight percent of the project was completed by January 1, 1975, and the main items yet to be completed on that date were the painting of the inside of the pool, the finish grading of the road to the pool, the finish grading of the parking lot, and the filling of the pool with water to check out the mechanical system. The painting and the filling of the pool for purposes of checking the equipment could not be done during the winter months because the paint would not adhere to the concrete, and the water in the pool would freeze, causing damage to the water pipes and the pool itself. The water line to the swimming pool was put in by Herbert Mogdlin, a contractor from Scott City, under an independent contract with defendant. It was not completed until the month of April in 1975. Defendant's architect, George Saller of George E. Butler and Associates, advised plaintiff, by letter of February 7, 1975 (plaintiff's exhibit 2) as follows: "We understand that the painting and the finish grading of the roads should

probably be completed in the Spring after the winter freezing and thawing has run its course. On the other hand, the finish grading of the parking area which would prevent storm water runoff from entering the bathhouse and pool areas should be completed at the present time in our judgment." Nothing was said in the letter regarding another extension of time, or the waiver of liquidated damages.

James O. Cauble, Jr., who was Mayor of Scott City from April of 1975 until April of 1976, and was a member of the city council prior to that time, testified that the installation of the playground equipment, which was a part of the project in question, was not done until after March of 1975; that defendant had to hire night watchmen to watch the playground equipment while the concrete for its installation was drying; that plaintiff had to lower the height of the parking lot after it was finished thereby causing a possible obstruction of traffic; and, that it was necessary for defendant to hire an additional engineer, Robert M. Harrison, to make additional inspections after December 15, 1974. These inspections were made in March of 1975. The engineer found that the finish grade of the parking lot was incorrect, which caused a drainage problem, and that the electrical and mechanical work was not finished.

On February 6, 1978, the trial court, citing *Bloomfield Reorganized School Dist. No. R–14 v. Stites,* 336 S.W.2d 95, 97 (Mo. 1960), as authority for its ruling, entered a judgment for defendant and dismissed plaintiff's petition, stating that the $8,300 withheld by the defendant represented liquidated damages and not a penalty, and that defendant did not have to prove any actual damages in order to claim liquidated damages. Plaintiff then appealed to this court.

Plaintiff raised only two points on appeal. 1) that the liquidated damages provision in the contract was, in reality, a penalty since defendant failed to show that it sustained any actual damages by plaintiff's failure to complete the contract by December 15, 1974; and, 2) that strict construction of the contract language clause concerning liquidated damages worked an absurdity or oppression in that plaintiff could not complete the balance of the work remaining to be done on December 15, 1974, because of adverse weather, thus causing the contract clause in question to be penal in nature. Both of the points raised by plaintiff concern the "much vexed question", as stated by Judge Lamm in *Thompson v. St. Charles County,* 227 Mo. 220, 235, 126 S.W. 1044, 1049 (1910), of whether or not a specific contract clause, in a public works construction contract, calling for liquidated damages at a per diem rate in the event that the contract is not completed by the day the contractor specified as a completion date, should be treated as such by the parties and enforced by the courts or should be regarded as a penalty clause that is unenforceable and void.

The right to stipulate for liquidated damages for delay in completing construction of public works is generally recognized, and the stipulated amount may be recovered, if reasonable. Provisions for fixed per diem payments for delay in the performance of such contracts are usually construed as stipulations for liquidated damages, and not as penalties, where the actual damages are uncertain or are difficult of ascertainment, and where the stated sum is a reasonable estimate of probable damages or is reasonably proportionate to actual damages.

█ In deciding such questions, the courts should consider the nature of the contract, the public detriment to be contemplated by the delay, and the difficulty in approximating damages as a result of the delay. In such cases, the courts generally hold that such contractual provisions are stipulations for liquidated damages, and are not penalties. 64 Am.Jur.2d, Public Works and Contracts, § 127, at p. 996. See also 13 Am.Jur.2d, Building and Construction Contracts, §§ 84–86, pp. 85–88.

There was a time when the courts were quite strong in their view that almost every contract clause containing a liquidated damage provision was, in fact, a forfeiture provision which equity abhorred, and therefore,

nothing but actual damages sustained by the aggrieved party could be recovered in case of contract breach caused by delay past the proposed completion date. But, in modern times, the courts have become more tolerant of such provisions, probably because of the Anglo-Saxon reliance on the importance of keeping one's word, and have become more strongly inclined to allow parties to make their own contracts and to carry out their own intentions, free of judicial interference, even when such non-intervention would result in the recovery of a prestated amount as liquidated damages, upon proof of a violation of the contract, and without proof of actual damages. *United States v. Bethlehem Steel Co.*, 205 U.S. 105, 119, 27 S.Ct. 450, 455, 51 L.Ed. 731, 737 (1907); *Yerxa v. Randazzo Macaroni Mfg. Co.*, 315 Mo. 927, 957–958, 288 S.W. 20, 34, (1926). The reasoning in *United States v. Bethlehem Steel,* supra, has been followed in Missouri in public works construction cases. See *Bloomfield Reorganized School Dist. No. R–14 v. Stites,* supra, and *Southwest Engineer Co. v. Reorganized Sch. Dist. R–9,* 434 S.W.2d 743 (Mo.App. 1968).

■ In this case, the relevant evidence was not disputed. Most of the facts were stipulated. The plaintiff was in default. It had already sought and was granted an extension of time to complete the project, with a waiver of liquidated damages for the period of time in question, from September 20, 1974, to December 15, 1974. In spite of this, plaintiff did not complete the project until May 30, 1975. Although we doubt, as did the trial court, that any proof of actual damages was necessary to bring the liquidated damages provision to life, the defendant has shown damage by the necessity of having to hire additional engineering personnel to inspect the project; by being inconvenienced by the regrading of the parking lot; and, by the loss of interest on its capital investment during the delay period in question.

It is true that the precise amount of such damages is difficult to ascertain. That is why a liquidated damages provision in a construction contract is beneficial to both parties. It protects the owner from a future laborious recitation of item by item damage, and it protects the contractor from a potential lump sum claim of substantial sums of money in the event of breach of the completion provision. Here, the contract was for $274,000. The liquidated damages were $8,300, which is only 3.029 percent of the total amount of the contract. When we consider modern interest rates, and the fact that the defendant was paying interest on its bond issue money at the rate of 5.83 percent during the time the plaintiff was in default (a stipulated fact), the amount of liquidated damages here was not oppressive, was not greatly disproportionate to the total amount of the contract, and should not be considered as a penalty. *Thompson v. St. Charles County,* supra, 227 Mo. at 240, 126 S.W. at 1050.

■ Plaintiff also urges, in its second point, that enforcing the liquidated damages provision of this contract would work an absurdity or oppression on plaintiff in that it could not paint the inside of the pool during the months of December of 1974 through April of 1975 for fear of the paint "popping off". We are not impressed by this argument. The record is completely devoid of any evidence as to why plaintiff had not painted the pool within the contract's extended period, which was from September 20, 1974, until December 15, 1974. What plaintiff is really saying, on appeal, is that in spite of its unexplained dilatory conduct, we should excuse its contractual debt, extend judicial approval to its admitted breach of contract, and decree that the contract, which plaintiff knowingly and willingly entered into, does not mean what it plainly says. We decline to do so. We have carefully considered all of the cases cited by plaintiff in its brief. None of them are on point under the facts of this case, and a recitation of their differences from the facts here would serve no useful purpose. The issues raised in the court below, based on the facts and the law, were correctly decided by the trial court.

The judgment is affirmed.

BILLINGS, J., recused.

FLANIGAN, C. J., and MAUS, J., concur.