Larry LUNA, Plaintiff–Appellant,

v.

Kenneth E. SMITH and Violet Smith,
Defendants–Respondents.

No. 18255.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 10, 1993.

H. Lynn Henry, Roy E. Williams, Jr., Henry & Henry, P.C., West Plains, for plaintiff-appellant.

R. David Ray, Garrett & Ray, West Plains, for defendants-respondents.

PARRISH, Chief Judge.

Larry Luna (plaintiff) appeals from a judgment in which the trial court found against him on claims that arose from business dealings between plaintiff and Kenneth E. Smith and Violet Smith (defendants). The business dealings involved certain premises in West Plains, Missouri, that plaintiff leased from defendants. The trial court found for plaintiff on a counterclaim by which defendants sought to recover damages for the value of certain equipment that had been used in the business operations that plaintiff conducted at the leased premises. There was no appeal taken from the part of the judgment that determined the counterclaim. This court affirms.

Plaintiff and defendants entered into a lease agreement dated October 1, 1988. The leased premises included a retail store and gasoline station in West Plains known as Ken's Quick Stop. The lease was "for the term to begin with the 29th day of September, 1988 until the 28th day of September, 2008, unless sooner terminated under the provisions [t]hereof." It provided that neither lessors nor lessee had the right to terminate the lease during its term "except for a breach of [its] covenants and conditions." The lease agreement also granted plaintiff "the absolute and irrevocable option to purchase the property" at a price and according to terms included in the agreement.

The leased premises were to be used "for a convenience store—gasoline filling station and related uses." In either December 1990, or January 1991, plaintiff contacted defendant Kenneth Smith. Mr. Smith testified, "He told me that he was unable to make the store work. And I had an option of taking the store back, or he was going to file Chapter 7 bankruptcy." The parties attempted to negotiate an agreement for the return of the store to defendants and the retention of certain equipment by plaintiff. Those efforts failed. Mr. Smith explained:

Q. [By defendants' attorney] Did you at some point agree upon a term at which you would resume operation to the store?

A. Not really. He just said he was going to close it down, not—In order to cut out as much loss as I could, I said I suppose I would.

Q. And did you indicate to him that you supposed you would take the store back over as of March the 1st?

A. Yes.

Q. And did he object to your taking over the store as of March the 1st?

A. No.

This case was tried before the trial court without a jury. Its appeal is governed by Rule 73.01.

The judgment of the trial court will not be disturbed unless it is against the weight of the evidence, is not supported by substantial evidence, or erroneously declares or applies the law.

*Carl v. Dickens,* 809 S.W.2d 466, 468 (Mo. App.1991).

Plaintiff's first point on appeal asserts the trial court erred in not allowing him damages for various items of inventory and other personal property that were retained by defendants when they regained possession of the leased premises. Plaintiff contends the trial court erred in enforcing "the 'liquidated damages' provision" in the lease agreement. He complains that the liquidated damages provision amounted to a penalty because "the parties made no attempt to agree upon an amount of probable damages at the time of contracting," and "the amount of liquidated damages bore no relationship to the amount of damages likely to be suffered in the event of breach."

The lease agreement provided that in the event plaintiff failed to operate the business "continuously and without interruption," defendants had the right to "enter and retake possession of all of the Leased Premises and reopen the same for business immediately after taking as complete an inventory of goods on the premises as is feasible under the circumstances." The lease agreement gave plaintiff the right to resume operation of the business upon giving defendants various notices, and if the inventory increased during the time defendants operated the business, "prior to resuming operations, [plaintiff was required to] pay to [defendants] in cash a sum equal to the increase in inventory valuation." In the event plaintiff did not resume operation of the business and did not "exercise the option to purchase," the following provision applied:

The parties further agree that the value of inventory surrendered upon any such taking of possession shall constitute liquidated damages due to [defendants] for such default, it being agreed that actual damages would be difficult, if not impossible, to ascertain. Such damages shall not be construed to be a penalty.

The trial court's judgment included the following findings:

The Court finds that plaintiff's announcement of intention to cease operation and surrender control of the operation constituted a breach by anticipatory repudiation. Having elected not to exercise the option to purchase nor to continue operation as a lessee, plaintiff surrendered all further rights under the agreement. The contract provided that in this circumstance defendants would be entitled to retain all inventory without further compensation as liquidated damages for plaintiff's breach. Defendant thereafter unilaterally inventoried the equipment and merchandise, as he had a right to do. He neither offered to compensate plaintiff for the value of such inventory nor demanded any further sums of plaintiff. Not until plaintiff brought this action did defendant join plaintiff in the contest of making lists of alleged damages.

The contract of the parties clearly anticipated that in the event of a refusal by plaintiff to continue performance, ascertainment of actual damages "would be difficult, if not impossible." This is precisely the situation in which the parties now find themselves. This is why the contract contained a liquidated damages provision.... [T]he contract expressly denied any right of termination and provided what should happen in the event plaintiff should elect to terminate in breach of the agreement. Specifically, defendant would retain the ending inventory as liquidated damages in lieu of actual damages which would be difficult or impossible to ascertain.

The trial court concluded:

By going back into possession and retaining the then-inventory as liquidated damages, while making no further demands upon plaintiff, defendants merely performed as required by the contract. Upon this event, no claim of either party against the other survived.

In *Sides Construction Co. v. City of Scott City,* 581 S.W.2d 443 (Mo.App.1979), this

court reviewed the "modern view" regarding liquidated damages and its development.

There was a time when the courts were quite strong in their view that almost every contract clause containing a liquidated damage provision was, in fact, a forfeiture provision which equity abhorred,.... But, in modern times, the courts have become more tolerant of such provisions, probably because of the Anglo–Saxon reliance on the importance of keeping one's word, and have become more strongly inclined to allow parties to make their own contracts and to carry out their own intentions, free of judicial interference, even when such non-intervention would result in the recovery of a prestated amount as liquidated damages, upon proof of a violation of the contract, and without proof of actual damages.

*Id.* at 446–47. In *Sides,* in upholding an award of liquidated damages, the court pointed out that "the relevant evidence was not disputed"; that there had been a default in performing the contract. *Id.* at 447. It was shown that the party who had prevailed in the trial court had sustained damage, but "the precise amount of such damages [was] difficult to ascertain." *Id.* The court concluded that was why the liquidated damages provision was beneficial.

In *Sides* "the contract was for $274,000. The liquidated damages were $8,300, which [was] only 3.029 percent of the total amount of the contract." *Id.* The court concluded "the amount of liquidated damages ... was not greatly disproportionate to the total amount of the contract, and should not be considered as a penalty." *Id.,* citing *Thompson v. St. Charles County,* 227 Mo. 220, 240, 126 S.W. 1044, 1050 (1910).[1]

Here, the evidence was that plaintiff breached the terms of the lease agreement.

Plaintiff ceased operation of the business. He violated the requirement that he operate the business at the leased premises "continuously and without interruption." He quit paying monthly rent. Thus, defendants were damaged. Although the record is not clear regarding whether plaintiff paid rent for December 1990 and January 1991, plaintiff acknowledged at trial that he had not paid the February 1991 rent, and he had not paid other amounts, including certain taxes, that the lease agreement required him to pay as additional rent.

The lease agreement did not expire until September 28, 2008. It required rent in the amount of $2,412.55 to be paid monthly on the first day of each month (other than for the month of October 1988, the first full month of the lease). The rent that was required to be paid over the entire 20–year term of the lease, not including the various taxes that were considered "additional rent," totaled $576,599.45.[2]

■ The liquidated damages that the lease agreement provided in the event plaintiff ceased operation of the business and defendants reentered and reopened the business was "the value of inventory surrendered." The physical inventory taken by defendants indicated that the value of the inventory in the leased premises when defendants reentered and took possession was $20,806.59. Although plaintiff did not participate in the inventory that defendants took, or otherwise take a separate physical inventory, his calculations, based on business records in the form of "daily reports," indicated the value of the inventory to be $20,465.09. The amount of liquidated damages according to defendants' inventory calculation was 3.61 percent of the total monthly rental payments that the lease agreement would have produced had

1. In *Thompson,* in upholding a liquidated damages provision, the court pointed out, "The damages were not exorbitant, or disproportioned to the amount likely to result. They were not a large gross sum to be forfeited for a default in a trivial matter." 126 S.W. at 1050. It then concluded, "Having regard to all these matters, this plaintiff voluntarily made a fair contract with defendant putting their own estimate on the damages. Let him keep his word by standing by his contract." *Id.*

2. The term of the lease was from September 29, 1988, until September 28, 2008. Rent in the amount of $2,412.55 per month was payable on the first day of each month during the term of the lease beginning November 1, 1988. Thus, 239 monthly payments of $2,412.55 were required to be paid unless plaintiff exercised an option to purchase the leased premises that was part of the lease agreement.

plaintiff not terminated it. The amount of the liquidated damages according to plaintiff's calculations was 3.55 percent of the total monthly rental payments. Here, as in *Sides,* the amount of what the agreement characterized as liquidated damages was not disproportionate to the total amount that was required to be paid by the terms of the agreement.

Prior Missouri cases have looked to the Restatement of Contracts in determining whether a liquidated damages clause in an agreement constitutes liquidated damages or is a penalty. *See Grand Bissell Towers, Inc. v. Joan Gagnon Enterprises, Inc.,* 657 S.W.2d 378, 379 (Mo.App.1983). *See also Corrigan Co. Mechanical Contractors, Inc. v. Fleischer,* 423 S.W.2d 209, 213–14 (Mo.App. 1967). Restatement (Second) of Contracts § 356(1) (1979) provides:

> Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

■ The comment that follows the foregoing restatement points out that the objective behind contractual remedies is to effect a compensatory award, not to provide a penalty for the breach of an agreement. It suggests that two factors combine for purposes of determining if an amount that is provided as damages is punitive or compensatory. The first factor is amount. If the amount fixed as damages is unreasonably large so that it exceeds what would be anticipated as the actual loss, it constitutes a penalty. The second factor is the difficulty of proof of loss. "If the difficulty of proof of loss is great, considerable latitude is allowed in the approximation of anticipated or actual harm."

Restatement (Second) of Contracts § 356 comment b (1979).

■ In this case the business premises were leased for a period of 20 years. The terms of the lease agreement included the requirement that plaintiff continuously operate a convenience store—gasoline filling station. The lease agreement included a covenant that defendants would not compete with plaintiff in the operation of a convenience store and gasoline filling station within a 20 mile radius of West Plains, Missouri, for a period of five years next following its date. The agreement gave defendants the right to enter and operate the business at the leased premises if plaintiff failed to continuously operate the business. If that occurred, the lease agreement gave plaintiff the right to "resume" operation of the business within a specified time upon complying with certain requirements.

Plaintiff ceased operation of the business at the leased premises. Defendants entered the premises and operated the business. Plaintiff did not exercise his right to resume operation of the business. The effective date when defendants took over the business was March 1, 1990. There were almost 18 years, 7 months remaining on the original term of the lease agreement. Defendants would have received 223 monthly rental payments had plaintiff continued to operate the business and fulfilled the terms of the lease agreement. Defendants would also have received reimbursement for certain other expenses and taxes attributable to the leased premises. This court finds that the value of the inventory that was retained as liquidated damages—$20,806.59 according to defendants' calculations; $20,465.09 according to plaintiff's—is not so unreasonably large as to constitute a penalty.[3]

■ With respect to the difficulty in proving the amount of the damages defendants

---

**3.** As stated, *supra,* the amounts of the inventory calculations are 3.61 percent and 3.55 percent, respectively, of the total monthly rental payments that the lease agreement would have produced had plaintiff not terminated it. The liquidated damages that were upheld in *Sides Construction Co. v. City of Scott City, supra,* were 3.029 percent of the total amount of the contract. In *Stein v. Bruce,* 366 S.W.2d 732, 737 (Mo.App.1963), 10 percent of the purchase price was determined to be a reasonable provision for liquidated damages. *See also Highland Inns Corp. v. American Landmark Corp.,* 650 S.W.2d 667, 674 (Mo.App. 1983), which upheld an award of $10,000 based upon a liquidated damages provision where there was evidence of loss of from $50,000 to $200,000 on a transaction in which the purchase price was $950,000.

sustained by reason of plaintiff's breach of the lease agreement, the trial court found, "The contract of the parties clearly anticipated that in the event of a refusal by plaintiff to continue performance, ascertainment of actual damages 'would be difficult, if not impossible.' This is precisely the situation in which the parties now find themselves." Considering the time remaining on the term of the lease agreement at the time it was repudiated by plaintiff; the fact that defendants had been precluded from operating a similar business within the immediate geographical area during the time that the lease agreement had been in effect; this court finds the trial court's determination that the amount of damages actually sustained by defendants would have been difficult to prove is supported by substantial evidence and is not against the weight of the evidence. Plaintiff's claim that the liquidated damages provision in the lease agreement was in fact a penalty that public policy requires not be enforced is denied.

Plaintiff also contends, as part of his first point on appeal, that the trial court erred in upholding the liquidated damages provision of the lease agreement because defendants and plaintiff had entered into a subsequent contract for repurchase of the inventory that superceded the lease agreement, and that the trial court further erred in upholding the liquidated damages provision because defendants did not "plead the forfeiture provision or raise the issue at the hearing."

Plaintiff, in contending that an oral agreement superceded the lease agreement, correctly states that there was testimony that the parties had engaged in conversations and communications relative to plaintiff's cessation of the operation of the business at the leased premises. The trial court found that these discussions did not produce a subsequent agreement; that the lease agreement had not been modified.

In construing the testimony of witnesses, this court defers to the trial court's assessment of credibility. Rule 73.01(c)(2). Having had the opportunity to observe the witnesses, the trial judge, sitting as the trier of fact, was entitled to believe all, part or none of the testimony of any witness. *Estate of Johnson v. Lamburth,* 719 S.W.2d 55, 59 (Mo.App.1986). On appeal, in considering the sufficiency of the evidence, this court accepts as true the evidence and permissible inferences favorable to the judgment and disregards contradictory evidence. *Morgan v. Morgan,* 701 S.W.2d 177, 179 (Mo.App. 1985).

Plaintiff's brief refers to trial testimony regarding discussions between plaintiff and defendant Kenneth Smith about equipment that had been removed from the leased premises and other matters related to the breach of the lease by plaintiff. None of that testimony demonstrates that an agreement was reached. Plaintiff's claim that the trial court erred by not finding that a subsequent oral agreement was reached is not supported by the evidence that was before the trial court.

In arguing that defendants are not entitled to benefit from the liquidated damages provision of the lease agreement because they did not "plead the forfeiture provision or raise the issue at the hearing," plaintiff relies on *Sides Construction Co. v. Arcadia Valley R-II School Dist.,* 565 S.W.2d 761 (Mo.App. 1978). In that case the school district sought to collect damages based on a liquidated damages provision in a construction contract. The trial court in the *Arcadia Valley* case held that a claimant relying on liquidated damage provisions was required to plead the existence of the liquidated damage provision and its applicability.

The circumstances in *Arcadia Valley* differ from those in this case. In *Arcadia Valley,* a counterclaim by a third-party defendant, the school district, alleged breach of a construction contract. The construction contract contained a liquidated damages provision. The counterclaim did not plead the liquidated damages provision. At trial evidence was offered about the liquidated damages provision of the contract, but refused upon timely objection by the opposing party. On appeal the court held that the counterclaimant's pleading did not support damages based on the liquidated damages provision in the contract; that the trial court did not err in so finding.

In this case plaintiff's claim was based on the existence of an oral agreement that he contended had modified certain terms of the written lease agreement. The trial court found against plaintiff. That finding was not based on the content of the written lease agreement. It was based on the determination that there was no subsequent oral agreement. Defendants were not required to "plead the forfeiture provision or raise the issue at the hearing." Plaintiff's first point is denied.

Plaintiff's second point asserts the trial court erred in denying his conversion claim "where the parties agreed to conduct a joint inventory" and "where [defendants] took possession of the building and assets to the exclusion of [plaintiff's] ownership rights, and where [defendants] refused to either return the inventory or to pay [plaintiff] its reasonable value on due demand."

A "point relied on" must include a statement of action or ruling of the trial court about which the party who appeals complains; a statement that specifies why the ruling was erroneous; and a statement that advises the appellate court what evidence at trial supported the position that the party who appeals asserts the trial court should have taken. *Bentlage v. Springgate*, 793 S.W.2d 228, 229 (Mo.App.1990); Rule 84.04(d). Plaintiff's second point is deficient in that it does not specify why the ruling about which it complains was erroneous. In that the requirements of Rule 84.04(d) are mandatory, *Grimes v. Bagwell*, 837 S.W.2d 554, 557 (Mo.App.1992), it preserves nothing for review. *Farm Credit Bank of St. Louis v. Jensen*, 844 S.W.2d 132, 133 (Mo.App. 1993).

Notwithstanding the deficiency in plaintiff's second point, this court may look to the argument portion of the brief to determine whether the trial court committed plain error affecting substantial rights that may have resulted in a manifest injustice or a miscarriage of justice. *Hoffman v. Koehler*, 757 S.W.2d 289, 292 (Mo.App.1988). Having reviewed plaintiff's argument with respect to his second point on appeal, this court finds no error on the part of the trial court, plain or otherwise.

Plaintiff based his conversion claim on the existence of an agreement that he contends was entered into subsequent to the lease agreement. He contends that, by reason of such an agreement, defendants were not entitled to retain personal property that was in the leased premises. As stated in the discussion regarding plaintiff's first point on appeal, the trial court found that no such agreement had been reached. Plaintiff's second point is denied.

Plaintiff, by his third point on appeal, again complains the trial court did not recognize that the parties had a right to modify provisions in the written lease agreement by subsequent agreement. He attempts to give a number of reasons why the parties would have been entitled to reach an agreement that modified the provisions in their written agreement. Defendants' brief suggests that this is repetitious; that the issues attempted to be raised by plaintiff's third point were not issues upon which the trial court decided the case. This court agrees. The third point is denied. The judgment is affirmed.

CROW, P.J., and SHRUM, J., concur.