Larremore,
Referee.—The defendant Frank B. Bapp, during the summer of 1890, entered into contracts with the defendant the mayor, aldermen and commonalty of the city of New York, to make certain sanitary alterations and improvements in public schools Nos. 57, 60, 76, and 83. Said Bapp thereafter commenced the work required by such contracts, but personally abandoned the same prior to the completion thereof, and the work called for by the contracts was thereafter completed under the direction of the boards of trustees of the wards in which 'said schools were respectively situated. The plaintiff above named, as a subcontractor under said Bapp, furnished materials for use, and which were actually used, in prosecuting the work in the school buildings. A number of actions were brought in different courts, by different subcontractors so furnishing materials, to foreclose mechanic’s liens filed by them, and all of such actions have been consolidated into the four actions, entitled as above, in this court, each of such consolidated actions relating to one of the public schools aforesaid. It appears that with regard to each of said schools a balance remains in the hands of the comptroller, on account of the contract price originally agreed to be paid to Bapp, after all payments made to Bapp, and by the trustees in the completion of the various jobs which he undertook. Some of the materials furnished by the various lienors were used by Bapp before he abandoned ; and some of the same, under the direction of the trustees, in completing the contracts after his abandonment. The various material men claim *292 that as their property was actually used in the prosecution of the work, and balances remain upon the contract prices, such balances represent the value of their property which has gone into the improvements, and that they should be entitled to payment out of the same in the order of the priority of the their respective liens.
It has been held by the general term of the supreme court, in the First department, in Wollreich v. Fettretch, 4 N. Y. Supp. 326, that when a builder abandons his contract, but leaves materials on the ground, which the owner accepts and uses, the relations of seller and buyer is created, and the builder is entitled to a material man’s lien for the price. This decision, however, would not help the present plaintiffs. If a new relation of vendor and purchaser, as to the materials, were supposed to have arisen, it could only benefit Rapp, the original contractor. Strictly speaking, the material men sold the material to Rapp in the first instance ; and, on any theory, he would be the only party in whose favor a contract of purchase by the city of the materials could be implied from their appropriation and use in the improvements after he abandoned. In my opinion, however, the principles laid down in one of the latest decisions of the court of appeals on the subject of mechanic’s liens aré decisive in favor of the rights of the material men to maintain mechanic's liens upon the various balances now in the comptroller’s hands. In Ogden v. Alexander, 140 N. Y. 356; 55 St. Rep. 744, the court, by Judge Finch uses this language:
“The facts are that Hill (a building contractor) abandoned the contract and never performed it. He made an assignment and discontinued work entirely. He thereby forfeited all right to the final payment at the option of the owner, and with that forfeiture fell any possible right of the lienor (a subcontractor who had furnished material), unless the owner waived the forfeiture, as by the terms of the agreement he was at liberty to do, and elected to complete the work under the contract at Hill’s expense. If he made that election, and so completed the work, and the cost proved to be less than the payment due at the end, the difference would be Hill’s profit, and payable to him, and upon that the lien could rest. If, on the other hand, there was no such .waiver, and no such election, but Alexander (the owner) chose to insist upon the forfeiture, and went on, not under the contract, but in his own way, and at his own expense, then the final payment never at all, or to any extent, became due to Hill, and there was nothing upon which plaintiff could have alien. It does not answer this difficulty to say, as did both the referee and the general term, that, after appropriating from the last stipulated payment all that it actually cost to complete the house, there still remained a balance unappropriated, and representing Hill’s profit, The materiality of that fact depends wholly on the question whether the owner stood upon the forfeiture, or-completed the house under the contract, and in behalf and at the risk of the contractor. Wheeler v. Schofield, 67 N. Y. 311. The written agreement permitted the latter choice by the owner upon giving three days’ notice, but there is no finding of any such fact; and unless we can supply it in some manner, *293 there is nothing due to Hill, and no fund to feed the lien. I incline to the opinion that we can supply the missing fact.”
The court then proceeds to spell out a finding that the owner had waived the forfeiture, and elected to complete under the contract, preserving both the liability of the contractor and the rights of the subcontractor, from, declarations made by the owner that were inconsistent with an intention upon his part to complete at his own expense, and on his own responsibility. The case at bar, which involves an essentially similar state of facts, is a stronger one in favor of the material men than was Ogden v. Alexander, because the record contains evidence, not only of acts in recognition and confirmation of the contract after its abandonment by Rapp, but also of the giving of the three days notice provided for. It would seem that the peculiar phraseology of section 1824 of the consolidation act, regulating mechanics’ liens against the city, granting a lien for work or materials performed or furnished, “ in pursuance of or in conformity with the terms of any contract made between any person or persons and the city,” and causing such lien to attach, not to buildings themselves, but to the moneys due or to grow due under the contracts, makes the principles enunciated in Ogden v. Alexander fully as applicable, if not more so, to mechanics’ liens for work done for the municipality than to cases of private building operations. The fourth section of the contracts in suit reads as follows:
“Fourth. That in case the party of the second part shall at any time refuse or neglect to supply a sufficiency of workmen and materials of the proper skill and quality, or shall fail in any respect to prosecute the work required by this contract with promptness and diligence, or shall omit to fulfill any provision herein contained, this contract, after three days’ notice in writing to the parties of the second and third parts, shall be, and shall be held to be, voided and forfeited; and the parties of the first part, or a majority of them, shall have the right and power to procure and employ other persons to perform and furnish the work and materials required by this contract, so as fully to execute the same in every respect, and the eost and expense thereof, at the reasonable market rates, shall be,a charge against the party of the second part, who shall pay to the parties of the first part the excess thereof over and above the unpaid balance of the amount to be paid under this contract ; and the party of the second part shall have no claim or demand to such unpaid balance, or by reason of the nonpayment thereof to said party.”
In my view, the true interpretation of this clause is that the city was authorized to complete the work under the contracts, and on the account of the contractor, who is expressly required topay any excess over and above the unpaid balances of the amounts payable to him under the contracts. The learned counsel for the corporation place great stress upon the final sentence of such clause, “and the party of the second part shall have no claim or demand to such unpaid balance, or by reason of the nonpayment thereof to said party.” Interpreting the clause, however, as a whole, the effect of this final provision is to deprive the party of the second *294 part of any right to a personal payment to him of said balance unless he himself completes the job. The agreement does not contemplate or provide for the contingency of the work being finished at a less total expense than the original contract price. It provides for the completion of the work under the contract in any event, either by Rapp himself, or by the trustees in his behalf and at his risk. Completion under the contract, and not aside from it, is the only form of completion which it contemplates. Nor do I think that the mere use of the word “ forfeited ” in the clause in question would compel a court to hold that a “forfeiture,” in the technical sense, had taken place, where, as here, the context and subsequent acts of the parties show that a “ forfeiture,” within the meaning of Ogden v. Alexander, supra, was not intended. See Ward v. Hudson River Building Co., 125 N. Y., bottom pages 234, 235; 34 St. Rep. 934.
The forms of the notices served on the ¿ontractor, Rapp, under the three-days provision, strengthen the position that the trustees completed under the contract. It appears that these notices were not personally served on Rapp, but were mailed to him and his sureties at the addresses given in the contracts. By a singular misconception, according to my view, of the respective interests of the parties, counsel for the lienors have contended very strenuously against the sufficiency .of such notice by mail; while, on the other hand, it has been equally sternuously contended on the part of the city that such notice was valid and regular. Upon this point I agree with the learned counsel for the corporation that the form of the service in question was proper and regular, especially in view of the fact that, the mailing of the notices having been testified to without contradiction, neither Mr. Rapp, who has attended on various occasions during the sessions of this reference, nor either of his sureties, was called to prove that they did not receive them. McCoy v. Mayor, etc., 46 Hun, 269; 11 St. Rep. 504; Beakes v. Da Cunha, 126 N. Y. 293; 37 St. Rep. 14. With regard to schools Nos. 57 and 83, the notice sent to the contractor and his sureties was as follows :
“In pursuance of the provisions of the contract between the trustees of the Twelfth ward and yourself for work on Gf. S. 57 and Gf. S. 83, we hereby notify you that you having failed to prosecute the work under the said contract, and having omitted to fulfill the provisions of the same, we shall, after three days, consider said contract voided and forfeited, and shall proceed with the completion of the work under the said contract, and hold you, and each of you, responsible for the cost of completion.”
The notice sent with regard to school No. 76 was in substantially the same form. The notice sent with regard to school No. 60 was to the effect that “ the trustees will avail themselves of the power granted by the fourth provision of the said contract.”
Reading these contracts according to their substantial intent, as a whole, and also considering the notices sent by the trustees of the different wards in pursuance thereof, it seems tome perfectly plain that the intention was not to insist on a technical forfeiture,—not for the trustees or for the city to go on with, the work in their *295 own way, and'at their own expense,—-but to proceed under the contracts and on the account of, and at the expense of, the contractor. If this view be correct, the balances on hand on account of these contract are under the doctrine of Ogden v. Alexander, subject to the liens of the material men. I have, in this discussion, relied principally upon Ogden v. Alexander, because it is the latest casein point in the court of last resort; but to the same substantial effect is Foshay v. Robinson, 137 N. Y. 134; 50 St. Rep. 192. The case at bar is distinguishable from Larkin v. McMullin, 120 N. Y. 206; 30 St. Rep. 902, and Hollister v. Mott, 132 N. Y. 18; 42 St. Rep. 848. Because in neither of the cases last named did the contract involved contain a provision by which the owner could complete the contract in case of the contractor’s default. See, also, Blakeslee v. Fisher, 49 St. Rep. 474.
It also appears that some of the material men have been paid for materials furnished to Rapp, and used in the schools in question, out of the funds appropriated to these contracts, and since Rapp’s abandonment thereof, and that, as to one of the schools, a final certificate of the completion of the work has been given. These circumstances are in my judgment, fully as inconsistent with the theory of a technical forfeiture of the contracts as the declarations made by the owner, relied upon to negative the theory of a forfeiture by the court of appeals in Ogden v. Alexander. It seems to me, therefore, as above intimated, that the rights of the material men to their liens are more clear in the present cases than was the subcontractor’s right in the case last cited, because here we have, not only, as in that case, evidence to estop the owner from asserting a forfeiture, but also—what was there wanting—the regular notice called for and contemplated by the contracts. By reason of the facts and circumstances above discussed, I am of the opinion that the final certificates, as to' the other three schools, have been unreasonably withheld.
The claim of the city for liquidated damages has caused some difficulty and uncertainty in determining these actions. There is no doubt that provisions for such damages in building contracts are enforceable in proper cases. Where, as here, the owners place no obstruction or hindrance in the contractor’s way, and do not waive their rights, expressly or impliedly, they may, if the contractor exceed his time, accept the job, and recover damages for the delay. Grannis & H. Co., v. Deeves, 72 Hun, 171; 55 St. Rep. 674; Dunn v. Steubing, 120 N. Y. 232; 30 St. Rep. 653. In the present cases the contracts, read in connection with the specifications, provide for the completion of the work on or before the 25th day of August, 1890, and it is also stipulated that the contractor shall forfeit twenty-five dollars for every day of delay beyond that date. The owners did not, although under the specifications, they might have done so, interfere with or take any action with regard to said work until after September 1st, at about which time the notices hereinbefore referred to were sent to the contractor and his sureties, and the trustees of the respective schools undertook the completion of the contracts; and the same were substantially finished on or before September 11th, when the schools opened for *296 the new year. There is a substantial and equitable reason for-recognizing the right, under building contracts, to deduct stipulated damages, and not treating such clauses as penalties. If a contractor fails to complete a building job on time, the owner usually suffers real loss, but loss of a character exceedingly difficult to definitely measure. The owner himself may be delayed in moving into the new building, or his business may be embarrassed by postponement of the use of additions or improvements to the structure, or he may lose rents from tenants who were prepared to go into possession at the time fixed for completion. As such damages would be uncertain, if expressly sued for, it is only just to effectuate the agreement of the parties as to the sum at which they shall be allowed. One of the latest utterances of the court of appeals on this subject is Ward v. Hudson River Building Co., 125 N. Y. 230; 34 St. Rep. 934, and certain passages from Judge Gray’s opinion therein furnish tests to dispose of the present question:
“If it then appear that the damage and loss which may be presumed to result from nonperformance are uncertain, and incapable of exact ascertainment, then the payment or liability fixed by them must be deemed to liquidated damages, and recoverable as such. Where, however, a sum has been stipulated as a payment by the defaulting party, which is disproportionate to the presumable or probable damage, or to a readily ascertainable loss, the-courts will treat it as a penalty, and will relieve, on the principle that the precise sum was not of the essence of the agreement, but was in the nature of a security for performance. * * * The result of an examination of cases to confirm the idea that it is difficult, if it is even possible, to lay down a general rule applicable to all the cases which arise, where parties have undertaken to-provide against a loss consequent upon a breach of an agreement. We may, at most, say that where they have stipulated for a payment in liquidation of damages, which are in their nature uncertain, and uncertain able with exactness, and may be dependent upon extrinsic considerations and circumstances, and the amount is not, on the face of the contract, out of all proportion to the probable loss, it will be treated as liquidated damages.”
The exercise of these tests seems to involve a certain amount of discretionary power in the court to determine whether or not a stipulated sum or rate shall be treated as liquidated damages under the circumstances of a given case, and the tests themselves presupposed actual damage, or at least probable or presumable damage, as essential to treating the specified amount as liquidated damages. The contracts in question in-the present cases were for sanitary improvements to public school buildings. The only serious necessity was that the work should be finished in time for the opening of the schools on September 11th. As matter of fact, it was substantially finished by that time; the respective board of trustees having, as above shown stepped in, and completed Rapp’s contracts. The opening of the schools was not delayed by the contractor’s default, and contrary to the rule in ordinary building agreements, it would seem that no damage could have resulted. Considering. *297 the special character of the work, and its actual completion in good season for every practical purpose, not only is there nothing fro rn which damage can be presumed, but in. my judgment, an affirmative presumption is raised that there was no damage. The most that can be said is that the trustees were put to additional exertion and extra trouble. But their personal damage or loss so occasioned is not allowable for under a public contract In Ward v. Building Co., supra, the nature of the building transaction was taken into consideration; and it was shown, as part of the argument allowing liquidated damages, that a presumption of pecuniary damage by the delay was raised. Under the doctrine of that case, it would seem that a fair presumption of actual damage is essential to the enforcement of provisions of this kind; and, as such prerequisite does not exist in the case at .bar, the claim of the municipality for deductions in the nature of liquidated damages must be disallowed.
I am glad to be able to arrive, upon what I conceive to be sound technical principles, at a clearly equitable result, According to the opposing views, the defendant, through the allowance of a purely arbitrary penalty, would be enabled to eat its cake and have its cake. The liens of the material men upon the balances of the respective contract prices should be allowed in the order of priority.