**CORRIGAN COMPANY MECHANICAL CONTRACTORS, INC., a Corporation, Plaintiff-Respondent,**

v.

**Morris I. FLEISCHER, Alfred J. Fleischer, John P. McHugh and Minnie R. Fleischer, co-partners, d/b/a Fleischer-Seeger Construction Company, Defendants-Appellants.**

No. 32620.

St. Louis Court of Appeals.

Missouri.

Dec. 19, 1967.

John Grossman, St. Louis, for defendants-appellants.

Anderson, Gilbert, Wolfort, Allen & Bierman, Norris H. Allen, St. Louis, for plaintiff-respondent.

BRADY, Commissioner.

Judgment in this jury-waived action was rendered in favor of plaintiff and against defendants on plaintiff's petition and in favor of plaintiff and against defendants on defendants' counterclaim. Plaintiff is a corporation and will be herein referred to by its designation in the trial court. Defendants are partners doing business as "Fleischer-Seeger Construction Company" and will be referred to as "Fleischer-Seeger" or as defendants. Defendants have perfected their appeal to this court.

The pleadings will help delineate the issues here involved. Plaintiff entered into a contract with defendants under the terms of which it agreed to furnish labor and materials, and do certain work in connection with defendants' contract to construct a power plant at Chamois, Missouri. Plaintiff had been paid for such work except for $4,900.00 which defendants refused to pay to plaintiff. In the instant case plaintiff seeks to recover this $4,900.00 with interest and costs. Defendants' answer was in the form of a general denial and they also filed a counterclaim in the nature of a setoff alleging there was due them from plaintiff the sum of $4,900.00 for services, material, labor, etc., necessary to complete work which they had performed as plaintiff's subcontractor in connection with the conversion of three boiler furnaces at the Carr Square Village project, a job for which plaintiff was prime contractor for the St. Louis Housing Authority. Defendants prayed judgment on their counterclaim for $4,900.00 with interest and costs and that in the event recovery was had by plaintiff on its petition defendants' judgment on its counterclaim be set off. Plaintiff's answer to the counterclaim admitted the performance of the work on the St. Louis project by defendants and the demand and refusal to pay the $4,900.00. The answer also set up the defense the contract under which both plaintiff and defendants were working on the Carr Square Village project contained certain completion dates and provided for penalties for failure to comply with such dates; that knowing of such penalties defendants failed to reasonably carry on the work which they undertook to do and so unreasonably and belatedly carried on such work as to cause breaches of said contract with respect to the completion dates; that as a direct and proximate result of defendants' activities penalties accrued under the contract which after all allowances resulted in a reasonable and proper charge by the St. Louis Housing Authority against plaintiff in the amount of $4,900.00; that this sum was retained and not paid to plaintiff by the Housing Authority under the contract; and that plaintiff was damag-

ed by the failure of defendant to reasonably do its work in accordance with the contract by that amount. In their reply defendants denied they failed to reasonably carry on the work or cause a breach of the contract; stated that any penalties assessed against plaintiff were improper and arbitrary; denied that they orally or in writing agreed and assumed to pay for any penalties; and stated that any delays were caused by conditions over which they had no control.

The parties filed a stipulation prior to the trial by which they agreed the amount of $4,900.00 was due the plaintiff under the contract sued on in the petition; that defendants agreed to do the work on the St. Louis Housing Authority project and "to complete in accordance with the Plans and Specifications * * *" the work involved in connection with the installation of these boilers; that defendants did the work mentioned; "That subject to its admissibility and competency, it is agreed that a multitude of delays ensued with respect to the finishing of the conversion of the coal fired boilers * * *"; and that the contract provides for certain completion dates and for liquidated damages in specified amounts in the event these dates were not met. The dates for completion and the amounts provided as liquidated damages as stipulated are the same as stated in the contract which was an exhibit and which will be set out more fully later herein. It was further stipulated extensions were applied for and some of them granted without charge by the Housing Authority which under the contract charged plaintiff a total of $4,900.00 as liquidated damages on account of delay; that plaintiff has paid defendants all amounts due excepting this sum; and that "* * * the dispute in this law suit concerns whether or not defendants, under the law and the facts, owe plaintiff $4900.00 on account of said alleged delay and the charge made against plaintiff by the St. Louis Housing Authority, * * *."

The specifications for the Carr Square Village project were admitted into evidence over defendants' objection. There are many provisions of this contract which would need to be stated in this opinion in order to rule upon all the allegations of error raised by defendants. However, it is our view that defendants' allegation of error with respect to the damages constituting a penalty is determinative of this appeal and we will confine our résumé of the contract and other pertinent evidence to that bearing upon this issue. In so doing it is apparent that we assume arguendo plaintiff's strongest case; i. e., it is correct as to the admissibility of Exhibit "B". Our ruling upon that point is then unnecessary to the disposition of this appeal and renders superfluous a summarization of the voluminous provisions of this exhibit which constitute the contract between plaintiff and the Housing Authority and which plaintiff contends also bind the defendants.

The evidence showed that prior to the 15th day of July, 1958, the Housing Authority requested bids for the purpose of converting three (3) furnaces in the Carr Square Village project from coal firing furnaces to combination oil and gas fired burners. The defendants as subcontractors submitted their bid for $30,800.00 for a portion of the work to the plaintiff as prime contractor. The bids were opened on July 15, 1958, and plaintiff was advised it was the successful bidder on that same day. However, plaintiff did not sign its contract with the Housing Authority until August 13th. The Housing Authority sent plaintiff a "Notice to Proceed" on August 27, 1958, the terms of which directed plaintiff to commence work on September 2, 1958. On August 28, 1958, plaintiff wrote the Housing Authority requesting extension of contract completion time stating the bid was submitted to the Housing Authority on July 15, 1958, but due to "delays beyond our control, we did not receive notice to proceed until August 28, 1958", and, "We do not believe it is possible to have the two (2) boilers in operation by October 15,

1958, because of the above mentioned delay." The Housing Authority responded by plaintiff's Exhibit "E" dated September 2, 1958, which letter stated it was unable to grant an extension of contract time since the award of the contract and the "Notice to Proceed" were issued in accordance with the contract documents but stated: "However, if in the future you experience any delays beyond your control in carrying out the contract work, please notify us immediately in writing of the delay and we will consider a contract time extension." On September 8, 1958 the plaintiff wrote to the defendants (plaintiff's Exhibit "F") stating that plaintiff had received a letter from the Housing Authority rejecting its claim for additional time extension, and further stating it was important to keep a daily record of progress and delays, as "we are all subject to $200.00 per day liquidated damages." This letter was received by defendants on September 9, 1958, upon which date defendants replied (plaintiff's Exhibit "G") acknowledging receipt and stating that "Since this job was so late in getting started after the time of bidding, we cannot agree to pay any liquidated damages unless we, ourselves, delay the job unnecessarily."

On October 15, 1958 plaintiff wrote to defendants (defendants' Exhibit 4) stating the contract called for Boilers 1 and 2 to be completed on October 15th and that Mr. McHugh, one of the partners in Fleischer-Seeger had informed plaintiff the first boiler would not be finished until October 17th. The letter continued: "After you have completed the brickwork it will take approximately two (2) weeks for us to complete the burner installation, and when the new installation on the first boiler is approved you can start on the second boiler. At your present rate of progress the second boiler will not be ready for operation until January 1, 1959. As you are well aware, the contract has a liquidated damaged clause holding the Contractor liable for any delays in completion. It is very important that you expend every effort to expedite the completion of your work, as you are subject to the liquidated damages as our Sub-Contractor."

On that same day defendants wrote plaintiff (plaintiff's Exhibit "H") stating defendants "received your order on August 29, 1958 and planned to start work September 2. We were then advised that we had to get our actual insurance policies to the Housing Authority by way of your office and that until they were approved we could not begin work. This was done and work began September 4. We anticipated completion of our work Friday, October 17 (on the No. 1 Boiler) which represents about six and one-half calendar weeks for the unit. The nature of the underpinning and replacement of the side walls of the boilers was found to be (is) such that in the interests of safety no more men could be practically used than the number we employed. The side walls had to be removed in sections and each section rebuilt before the next section was removed. Because of the safety factor involved, we believe the progress of the furnace work was in keeping with good, planned programming. Had we been able to start on August 4, which we expected would be the situation at the time the job was bid on July 15, the first boiler would have been completed by now and the second boiler would have been fast approaching completion by the latter part of October. In spite of the Specification statement on Page H–2, it is also probable that had construction work begun on August 4 the Housing Authority might have permitted both boilers to go forward at once, which would have permitted the first two units to be complete by the middle of September and the third boiler by the end of October." The statement referred to required two of these three boilers to be "on the line"; i. e., in working order at all times.

On October 16, 1958, Fleischer-Seeger wrote plaintiff referring to their letters of October 15 as having "crossed" in the mails and stating: "In no way do we agree that

we are subject to liquidated damages as your subcontractor on this project."

It appeared from the evidence Boiler No. 1 was complete on November 4, 1958, but defendants were not given the okay to go ahead on Boiler No. 2 until November 18th, and that the delay was caused by confusion between the Housing Authority, plaintiff and the mechanical engineer. Boiler 2 was commenced on November 18th and completed on January 15, 1959. Plaintiff notified defendants on February 15th to commence work on Boiler 3 on February 9th and Boiler 3 was bricked up on April 17th.

The provisions of the contract between the Housing Authority and plaintiff relating to the time for completion of this work and liquidated damages for failure to comply with such dates are found at Page 46 and read as follows: "2. TIME FOR COMPLETION a. The Contractor shall commence work at the time stipulated in the Notice to Proceed to the Contractor and shall complete the conversion work so that boilers No. 1 and No. 2 will be in operation on oil and gas fuels on or before October 15, 1958. b. Boiler No. 3 shall be complete and ready for operation on oil and gas fuels on or before December 15, 1958. 3 LIQUIDATED DAMAGES As actual damages for any delay in completion are impossible of determination, the Contractor and his sureties shall be liable for and pay to the Local Authority the sum of $200.00 as fixed, agreed and liquidated damages for each calendar day of delay for work described in Section 2a, until the work is completed and the sum of $100.00 for each calendar day of delay for work described in Section 2b, until the contract work is completed." The Housing Authority granted an extension of eighty-two calendar days for Boilers 1 and 2 which deducted from the ninety-nine calendar days actual overrun of contract time left seventeen days for which they assessed damages on these boilers at $200.00 per day or $3,400.00 in liquidated damages. As to Boiler 3 there were one hundred twenty-seven calendar days actual overrun of contract time and the Housing Authority granted extension of one hundred twelve calendar days, leaving fifteen days which they computed at $100.00 per day or $1,500.00 liquidated damages, for a total of $4,900.00 which they assessed against the plaintiff and withheld from the payment due it under the contract. This is the amount in dispute in this action.

The contract between plaintiff and the defendants consists of the job order signed by plaintiff which was in response to defendants' offer to do this work for the price stipulated. As previously stated herein that contract refers to completion " * * * in accordance with the Plans and Specifications the following items * * *". It does not contain any other agreements between the parties with reference to damages or any other language pertinent to the dispute between these parties.

So far as this record is concerned it must be read as showing that the provision requiring two of these three boilers to be working at all times was complied with. There is no other evidence as to any damage suffered by the Housing Authority and in fact the transcript shows that it was admitted the residents of the Carr Square Village project did not suffer any loss of heat or loss of hot water due to this delay.

In their reply to plaintiff's answer to the counterclaim defendants contended that any amounts assessed against plaintiff were improper and arbitrary and constituted penalties which are unenforceable. This point was preserved in defendants' motion for new trial and in the brief and argument before this court. Section 339, Restatement of the Law, Contracts, reads as follows in its pertinent parts: "LIQUIDATED DAMAGES AND PENALTIES. (1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless (a) the amount so fixed is a reasonable

forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation." That portion of Comment "e" following that subsection pertinent to this appeal reads as follows: "If the parties honestly but mistakenly suppose that a breach will cause harm that will be incapable or very difficult of accurate estimation, *when in fact the breach causes no harm at all* or none that is incapable of accurate estimation without difficulty, their advance agreement fixing the amount to be paid as damages for the breach is within the rule stated in Subsection (1) and is not enforceable." (Emphasis supplied.) This record is devoid of evidence any harm to the Housing Authority resulted from the delay in completion of this project in accordance with the time specified within the contract. Plaintiff's admission the residents of the Carr Square Village project suffered no loss of heat or hot water must be interpreted as evidence to the contrary. That being so, the Housing Authority was not justified in assessing the sum of $4,900.00 as liquidated damages for the reason that regardless of the name given to this sum it amounted to a penalty. Restatement, Contracts, § 339, Comment "e". As this court said in Ward v. Haren, 183 Mo.App. 569, 167 S.W. 1064, 1. c. 1070 [9] [10]: "[9] And furthermore, even though the contract be construed as providing for liquidated damages, where no damages whatsoever have been sustained by the breach, we do not see how there could be a recovery of anything more than nominal damages. In Werner v. Finley, 144 Mo. App. [554] loc. cit. 561, 129 S.W. [73] 75, it is said: 'The law undoubtedly is that, before any liability to pay liquidated damages can attach to the party in default, he must have been guilty of a substantial breach of his agreement, a breach which has resulted in more than mere nominal damage to the other party. "This rule is so manifestly just that no discussion of it is necessary." Hathaway v. Lynn, 75 Wis.

186, 43 N.W. 956, 6 L.R.A. 553.' See, also, McKee v. Rapp (Super.) 35 N.Y.S. 175; McCann v. City of Albany, 158 N.Y. 634, 53 N.E. 673; Wilcus v. Kling, 87 Ill. 107; 1 Sedgwick on Damages (9th Ed.) p. 759. * * * [10] While it is true that in an action to recover liquidated damages, where the amount stipulated in the contract may be properly treated as such, the stipulation between the parties becomes the measure of the actual damages sustained, nevertheless it is incumbent upon the party seeking to recover for such breach of the contract to show not only the breach, but that damages have in fact accrued in consequence thereof. Having shown the breach, and that substantial damage has resulted therefrom, the stipulation in the contract, in a proper case, will then come to his aid to determine the amount of his recovery, which otherwise might be uncertain and difficult of proof. But it must be made to appear that he has sustained some damage. In the instant case it was incumbent upon defendant to show that he had suffered some actual damage in order to entitle him to recover upon his counterclaim. In this he failed. And it will not do to say that the stipulation in the contract furnishes the measure of the damages, when in fact none were entailed by the breach." See also Franken v. Carpenter, Mo.App., 364 S.W.2d 15, 1. c. 19 [6, 7], where this court, citing Ward v. Haren, supra, held: "A penalty, as such, is not enforceable and it is incumbent upon the party seeking to recover for a delay in performance 'to show not only the breach, but that damages have in fact accrued in consequence thereof.' * * * *" The $4,900.00 withheld by the Housing Authority from the amount due plaintiff constitutes a penalty rather than liquidated damages. While the propriety of such an act is not at issue in this appeal this amount could not properly be withheld from the plaintiff by the Housing Authority. That being so, plaintiff cannot properly withhold such sum from the defendants.

It was stipulated by the parties plaintiff was entitled to $4,900.00 on its petition and the decision herein is that defendants are entitled to the same sum on their counterclaim which shall operate as a setoff against plaintiff's claim. Accordingly, this judgment must be reversed and the cause remanded to the trial court with directions that it enter its judgment in favor of plaintiff and against defendants in the sum of $4,900.00 on plaintiff's petition and in favor of defendants and against plaintiff in the sum of $4,900.00 on defendants' counterclaim. All costs are to be taxed against plaintiff.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The judgment is reversed and the cause remanded to the trial court with directions that it enter its judgment in favor of plaintiff and against defendants in the sum of $4,900.00 on plaintiff's petition and in favor of defendants and against plaintiff in the sum of $4,900.00 on defendants' counterclaim. All costs are to be taxed against plaintiff.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.